## TURNER v. OLIPHANT OIL CORPORATION.

### No. 6227.

Court of Appeal of Louisiana.
Second Circuit.

Nov. 29, 1940.

Rehearing Denied Jan. 13, 1941.

Writ of Certiorari and Review Denied
March 3, 1941.

Cook, Cook & Egan and Albert T. Hughes, Jr., all of Sheveport, for appellant.

Louis Lyons, of Bossier City, for appellee.

DREW, Judge.

This is a suit under the Workmen's Compensation Act of Louisiana. Plaintiff alleged he was totally and permanently disabled in an accident while performing duties within the course and scope of his employment with defendant. He was awarded compensation by the lower Court in the sum of $20 per week for a period of 400 weeks and from this judgment defendant prosecutes this appeal.

The Oliphant Oil Corporation is in the business of producing oil and is what is known as a producing company. It does not do its own drilling or its own refining. It produces and sells oil. The Corporation buys leases and contracts for the drilling of wells thereon. When a well is dry or has ceased to produce, it is to the pecuniary interest of the said Corporation to salvage as much of the pipe or casing as possible from said wells. It has no implements of its own with which to do this, so it contracts with what are known as "well pullers" to salvage the casing. These well pullers, as in the instant case, are independent contractors and it was for one of these independent contractors of the Oliphant Oil Corporation that plaintiff was working when he received the injury for which he is suing.

The evidence conclusively proves that plaintiff was at the time of the trial below totally and permanently incapacitated from following work in an oil field and that he had no other trade or calling. His wages at the time of the accident were $35 per week and, if he is entitled to compensation at all, he is entitled to $20 a week for a period of disability not to exceed 400 weeks.

The most serious defense urged is that the work in which plaintiff was engaged at the time of the accident was not a part of the trade, business or occupation of the defendant Corporation.

The record discloses that casing can be pulled from a well in various ways, by the use of a drilling rig or a tractor or truck with windlass, etc., and that until recent years each oil company pulled the casing from its own abandoned wells, but during the last few years all the oil companies in northwest Louisiana have been contracting these jobs to those who make their living pulling wells. It is obvious that the reason for this is that it is more profitable to the oil companies to handle it by contract than to do it themselves. It is certain though that all oil companies do salvage all the casing possible from abandoned wells. It is to their pecuniary interest to do so and anything connected with the producing and handling of the oil, saving and protecting the machinery, casing and equipment necessary for use in producing oil is a part of the trade, business and occupation of the oil companies.

The mere fact that none of the oil companies in northwest Louisiana pull their own casing is not decisive of the question

any more than it would be to hold that an employee on a drilling rig is not covered by Section 6 of the Compensation Act (No. 20 of 1914, as amended) because all of the oil companies ceased doing their own drilling and had it done by contract, or that an employee of a contractor to build derricks did not come under the provisions because all oil companies contracted for their derricks to be built by independent contractors.

The salvaging of the casing used in a well to produce oil or in search of oil is as much a part of the business of an oil company as the saving of the oil which comes out through the casing or the removal of the drilling rig and boiler used in drilling the well after it is completed. The method used by the oil company to salvage the casing, whether by its own employee or by contracting to have it done by an independent contractor can make no difference.

It therefore follows that the judgment of the lower court is amended by making the period of payment to be during disability not to exceed 400 weeks instead of for 400 weeks; and as amended the judgment of the lower court is affirmed.