Jack **ARNOLD** and Neal M. Demesia, Plaintiffs-Appellees,

v.

**SHELL OIL COMPANY**, Defendant-Third Party Plaintiff-Appellant,

v.

**LIBERTY WELDING AND IRON WORKS, INC.**, Third-Party Defendant-Appellee.

No. 26793.

United States Court of Appeals
Fifth Circuit.

Nov. 12, 1969.

Rehearing Denied April 17, 1970.

---

9. There was other ground for reversal and award of a new trial.

L. Howard McCurdy, Jr., John J. Weigel, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for Shell Oil Co.

Frank S. Bruno, Arthur B. Hammond, New Orleans, La., for plaintiffs-appellees.

A. R. Christovich, Jr., Christovich & Kearney, New Orleans, La., for Liberty Mutual Insurance Co.

Louis B. Porterie, New Orleans, La., for Liberty Welding and Iron Works, Inc.

Before WISDOM and MORGAN, Circuit Judges, and DAVIS,* Judge of the United States Court of Claims.

WISDOM, Circuit Judge.

In this diversity case the sole question on appeal is whether the work Liberty Welding and Iron Works, Inc. performed for Shell Oil Company on a heater treater was part of Shell's "trade, business, or occupation" for purposes of coverage by the Louisiana Workmen's Compensation Statute, L.R.S.A. § 23:1061. The district judge submitted this question to the jury. The jury found that the work was not part of Shell's "trade, business or occupation". We hold, as a matter of law, that the judgment must be reversed notwithstanding the jury's verdict.

Shell hired Liberty to replace the internal tubes of a steam generator or "heater treater" located at the Shell Central Facility at Southwest Pass, Louisiana. A heater treater is a device that is used to separate sand and salt water from freshly mined oil. During operation, the tubes inside the heater

* Sitting by designation.

treater deteriorate and must be replaced from time to time. To replace the tubing, the worker must enter the heater treater, cut out the old tubes with an acetylene torch, and insert the new tubes.

Arnold and Demesia, employees of Liberty, were replacing the tubes in the Shell heater treater when they were injured. They sued Shell. Liberty Mutual Insurance Company intervened to recover compensation out of any judgment Arnold and Demesia might obtain against Shell. Shell filed a third-party complaint against Liberty Welding and Liberty Mutual, Liberty Welding's insurer, for indemnity against any claims by Arnold and Demesia. Liberty Welding answered the third-party complaint and cross-complained against Liberty Mutual. The district court granted Liberty Mutual's motion to dismiss the

third-party complaint filed against it by Shell, but allowed Liberty Welding's third-party complaint against Liberty Mutual and its counterclaim against Arnold and Demesia to go to trial.

The case was tried before a jury on special interrogatories. The district court submitted the following issue to the jury: "Was the work for which Shell contracted with Liberty Welding Company part of Shell's regular trade, business, or occupation".[1]

The jury found that Shell's contract work with Liberty Welding was not part of the oil company's regular trade, business, or occupation and awarded Arnold $11,000 and Demesia $1,350.

### I.

Section 23:1061 of the Louisiana Revised Statutes [2] provides that any person

---

1. Accompanying this issue, the district court gave the following instruction:

    In determining whether the work involved here was part of Shell's business, one relevant factor is whether this work is customarily considered part of the regular business of employers performing through their own employees the work of the occupation in which such employers are engaged. You should consider in this connection whether this work was the kind of special work not generally done by others engaged in the same line of business as Shell, whether it was the kind of work ordinarily done by specialists not customarily directly employed by companies in the same business as Shell. In determining the nature of Shell's business, you may take into account the whole of its operations and not merely its work at one site or in one department.

    The Louisiana Courts have held that the Louisiana Workmen's Compensation statute should be liberally construed so as to include all services that can reasonably be said to be within the statute, not only when the injured person seeks its protection, but when he attempts to have himself excluded from the coverage of the Act. The decisive factors are the nature of the employee's work and of the principal's trade, business or occupation. Unless the work is of such a special or separate character as would not ordinarily or ap-

propriately be performed by Shell Oil Company or in the prosecution of its business or as an essential part thereof, it is a part of Shell's trade, business or occupation.

    Further in considering the scope of Shell's regular trade, business or occupation, you may consider the nature and extent of its business and activities and the things usually done by companies engaged in like businesses.

2. L.R.S.A. § 23:1061:

    Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to

who "contracts out" work which is part of his trade, business, or occupation is liable to any employee of the contractor engaged in the work for workmen's compensation to the same extent as if the contractor's employee were one of his own employees. This section further provides that if the employer is liable to the contractor's employee, he is entitled to indemnity for these payments from any of the employee's other employers who are also liable for workmen's compensation payments. Professor Wex Malone, the leading authority in the field, in Principal's Liability for Workmen's Compensation to Employees of Contractor, 10 La.L.Rev. 25 (1949), explains the purpose of section 23:1061:

> In the absence of some special provision in the Workmen's Compensation Act it would be possible for an employer to avoid his compensation responsibility merely by interposing an independent contractor or sub-contractor between himself and his employees. This, of course, would not deprive the employee of protection so long as the intermediary contractor is solvent or protected by insurance. However, the possibility of using an impecunious middle man as a means of dodging compensation remains, and it was necessary to prevent this by subjecting certain principals to the compensation claims of their contractor's employees. A provision of this type is found in most compensation acts. * * * The purpose of Section Six as a means of preventing the evasion of compensation is again made clear by the fact that it comes into operation only when the work let by contract is a part of the regular business

of the principal. Normally the worker must be satisfied to accept the financial status of his immediate employer. It is neither expedient in policy nor workable from an administrative viewpoint to require that all persons who in any way accept the services of a contractor must lay themselves open to suit by the latter's employees. Thus a principal is not fairly subject to suspicion of seeking to avoid his compensation liability unless he has attempted to relegate a part of his own regular operations to a contractor.

Id. at 25–27. In the context of this case, we must decide whether, as a matter of law, the work that Arnold and Demesia performed on Shell's heater treater was part of Shell's own regular operations. If the work was part of Shell's regular operations, the sole remedy available to Arnold and Demesia was under the Louisiana Workmen's Compensation Laws and they could not maintain this suit.[3]

## II.

Only one witness, B. O. Carlson, Division Production Superintendent of Shell Oil Company in New Orleans, testified at the trial on whether the work on the heater treater was part of Shell's regular business. He testified that Shell Oil operates throughout the entire United States in a myriad of activities, including finding, producing, transporting, refining, manufacturing, marketing, and selling oil and gas products. In the Delta Division, which encompasses the Central Facility where Arnold and Demesia were injured, Shell employed six crews at the time of the accident. Each crew

---

the earnings of the employee under the employer by whom he is immediately employed.

Where the principal is liable to pay compensation under this Section, he shall be entitled to indemnity from any person who independently of this Section would have been liable to pay compensation to the employee or his dependent, and shall have a cause of action therefor.

3. L.R.S.A. § 23:1032:

The rights and remedies herein granted to an employee or his dependent on account of a personal injury for which he is entitled to compensation under this Chapter shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations.

Nothing in this Chapter shall affect the liability of the employer to a fine or penalty under any other statute.

had a maintenance department which included a welder, among others. Throughout Louisiana, Shell's vast interests required that it employ engineers, pilots, scientists, truck drivers, lawyers, salesmen, and various skilled laborers and technicians. Occasionally Shell contracted with independent contractors for the performance of some maintenance work but this was not done on the sole consideration of whether Shell had employees capable of performing the particular activity. Rather, the more compelling consideration seemed to be that Shell could hire independent contractors for less than it would cost to use its own employees.

Carlson described the operations of the Delta Division. He stated that as oil and gas are mined from the earth some sand and salt water are always produced along with the oil and gas. This residue must be separated from the oil prior to the oil being placed in a pipeline that will carry it to a refinery. The separation takes place in a heater treater which requires some form of heat, usually provided by a steam generator. Carlson described the work Arnold and Demesia performed as "an expected repair". Demesia testified that replacing the tubes on the heater treater was routine work required on any such generator. Arnold agreed that the replacement of this tubing was to be expected in any similar boiler. Carlson testified, however, that Shell always contracted out its work on its heater treaters. There was no evidence bearing on the custom in the industry.

In deciding whether the work performed by Arnold and Demesia was part of Shell's trade or business for the purposes of workmen's compensation coverage, we keep in mind that the workmen's compensation law should be liberally construed with a view to coverage. It makes no difference that Shell, the employer, is the party asserting coverage. See Isthmian S.S. Co. v. Olivieri, 5 Cir.1953, 202 F.2d 492, 494; Thibodaux v. Sun Oil Co., La.App. 1 Cir.1949, 40 So.2d 761, 766, aff'd, 1950, 218 La. 453, 49 So.2d 852.

This Court has already held that a heater treater is part of the regular operations of an integrated oil company for purposes of section 23:1061 of the Louisiana Revised Statutes. Fontenot v. Stanolind Oil & Gas Co., 5 Cir.1957, 243 F.2d 574. In that case we affirmed summary judgment against Fontenot on the basis of the district court's opinion, Fontenot v. Stanolind Oil & Gas Co., W. D.La.1956, 144 F.Supp. 818. The district court stated:

The Court has reached the conclusion that the trade, business, and/or occupation of Stanolind was and is the production, saving and marketing of oil, gas and other petroleum products, and that the operation of emulsion heater treaters to separate the oil from the water, including the cleaning and servicing of same, is legally a part of Stanolind's trade, business and/or occupation. *If a jury were to hold otherwise, I would, under the law as construed by the courts, feel it my duty to set that verdict aside.* This would be required, I believe, by the reasoning in Thibodaux v. Sun Oil Company, 218 La. 453, 49 So.2d 852; Spanja v. Thibodaux Boiler Works, La.App., 2 So.2d 668; Turner v. Oliphant Oil Corporation, La.App., 200 So. 513; Wynn v. Fidelity and Casualty Company, La.App., 85 So.2d 315. (Emphasis added.) 144 F.Supp. at 824.

The facts in *Fontenot* are remarkably similar to the facts in the instant case, with one exception. In *Fontenot* there was substantial evidence that the cleaning and repair of Stanolind's heater treaters was regularly performed by Stanolind's own employees; Stanolind only contracted out this work when none of its own employees were available. Here, however, Shell always contracted out this work. There is no question that Shell is a fully integrated oil company that is engaged in the production, saving, and marketing of oil and other

petroleum products. It is also undisputed that heater treaters are essential to Shell's oil business. The only question therefore is whether Shell's mere failure to use its own employees some of the time to clean and repair the heater treaters is sufficient to take this activity out of its "trade, business, or occupation". To answer this question we must look to what the Louisiana courts have held on the issue and what we have said the Louisiana courts have said.

One of the earliest Louisiana cases construing section 23:1061 held that hauling steel pipe from one oil well to another was part of an oil company's business. Seabury v. Arkansas Natural Gas Corp., 1930, 14 La.App. 153, 127 So. 25, aff'd, 171 La. 199, 130 So. 1. The court in *Seabury* however, did not articulate the test it used in determining that this work was part of the business of Arkansas Natural Gas; it simply held that this work was covered. Later, the same court, in Dandridge v. Fidelity & Casualty Co., La.App. 2d Cir.1939, 192 So. 887, held that welders with whom an oil company contracted for the repair of oil production equipment were engaged in an activity that was part of the business of the company. In *Dandridge,* the court laid great stress on the fact that the welders were hired to perform repair work on equipment that was already installed and on the fact that the repair work could have been performed by regular employees of United Gas. The court went on to state:

A part of the business, trade and occupation of the United Gas Company was the drilling of wells in search for oil and gas. The setting up of the machinery and equipment with which to drill was necessary in order to drill, and minor repairs by welding of and on the equipment was likewise necessary every time it was set up. It is

so closely related to the actual drilling of the well as to become a component part of it, and, to our minds, clearly is a part of the business, trade and occupation of the United Gas Company and is a part of its operation. 192 So. at 891.

The Louisiana courts in these two cases seemed to be developing a two-pronged test based on business necessity and employment of similar workers.

In Turner v. Oliphant Oil Corp., La. App. 2d Cir.1940, 200 So. 513, however, the court began to focus more on business necessity. In that case, the court held that an employee who was pulling casing from one of Oliphant's abandoned wells was engaging in Oliphant's trade or business, even though Oliphant did not do its own drilling or refining, but produced and sold oil. The court stated, 200 So. at 513.

The record discloses that casing can be pulled from a well in various ways, by the use of a drilling rig or a tractor or truck with windlass, etc., and that until recent years each oil company pulled the casing from its own abandoned wells, but during the last few years all the oil companies in northwest Louisiana have been contracting these jobs to those who make their living pulling wells. It is obvious that the reason for this is that it is more profitable to the oil companies to handle it by contract than to do it themselves. It is certain though that all oil companies do salvage all the casing possible from abandoned wells. It is to their pecuniary interest to do so and anything connected with the producing and handling of the oil, saving and protecting the machinery, casing and equipment necessary for use in producing oil is part of the trade, business and occupation of the oil companies." [4]

4. The Court continued:
The mere fact that none of the oil companies in northwest Louisiana pull their own casing is not decisive of the question any more than it would be to hold that an employee on a drilling rig is not covered by Section 6 of the Compensation Act (No. 20 of 1914, as amended) because all of the oil companies ceased doing their own drilling and had it done by contract, or that an employee of a contractor to build

*Turner* seems to reject the test for determining "trade or business" based on whether the employer had any employees engaged in that type of activity. See Malone, Principal's Liability for Workmen's Compensation to Employees of Contractor, 10 La.L.Rev. 25, 35–40 (1949).

Thibodaux v. Sun Oil Co., La.App. 1st Cir. 1949, 40 So.2d 761, aff'd, 1950, 218 La. 453, 49 So.2d 852, reinforces the reasoning in *Turner*. That case involved the death of Thibodaux and injury to Baker while they were working on Sun Oil's drilling rig. Both Thibodaux and Baker pleaded that their work was a highly specialized part of oil field work, not customarily done by Sun Oil. The district court sustained Sun Oil's exceptions of no cause of action, and the

Court of Appeals affirmed.[5] The Louisiana Supreme Court, affirming the Court of Appeals, stated:

> Here, the Sun Oil Company is engaged in the business of exploring for and producing oil. The drilling of wells, the reworking, if necessary, and the "fishing out" of well tools and implements which become stuck in the course of drilling the well are all interrelated and component parts, though different phases, of oil production. In other words both Thibodaux and Baker were performing services in connection with work which was part of the business, trade and occupation of Sun Oil Company, or so closely related thereto as to become an integral part thereof. 49 So.2d at 854.

derricks did not come under the provisions because all oil companies contracted for their derricks to be built by independent contractors.

The salvaging of the casing used in a well to produce oil or in search of oil is as much as part of the business of an oil company as the saving of the oil which comes out through the casing or the removal of the drilling rig and boiler used in drilling the well after it is completed. The method used by the oil company to salvage the casing, whether by its own employee or by contracting to have it done by an independent contractor can make no difference. 200 So. at 513–514.

5. The Court of Appeal said:

It is apparent from the Thibodaux petition that the decedent was employed by Chance, which company was engaged in the drilling of oil wells and work incidental thereto, for example the reworking or working over of oil wells. In fact, on the day of the accident Chance was engaged in the reworking of an oil well belonging to the Sun Oil Company. This work involved drilling and other work incidental thereto. From the admitted facts supra, Sun Oil Company was engaged in the business of exploring for oil and the mining of oil. It is clear that a part of the business, trade and occupation of the Sun Oil Company was the drilling of wells, and the reworking of wells if necessary in search for oil and/or its production. Therefore, it follows that Chance was engaged in work the very

nature of which was a part of the business, trade and occupation of the Sun Oil Company. * * *

With reference to the Baker suit, it is to be noted that the work being done by Homco was the "fishing out" of well tools and implements stuck in the same well in question. Baker was in charge of the operation using the employees and the equipment of Chance, the contractor of Sun Oil Company. The loss or sticking of tools in an oil well is one of the hazards of drilling such a well. In order to continue the operation of drilling and in order not to lose the work which has been done, it is necessary and in order that such tools be "fished out". The "fishing out" of the tools in this well is so closely related to the actual drilling of the well as to become a component part of it. We have no allegation that the Sun Oil Company is engaged in this type of work in so far as the general public is concerned; however, it is a fact that it is interested in seeing that lost or stuck tools are "fished out" of any oil wells belonging to it. It is in furtherance of its business to see that such operations are carried out. To our mind, it is so closely related to its business that it can be said to be a part of its operation in the production of oil. The mere fact that it prefers to engage the service of a company which specializes in this type of work instead of employing directly "fishing tool" experts makes no difference in the application of the legal problem involved. 40 So.2d at 765–766.

**50**

In Isthmian S.S. Co. v. Olivieri, 5 Cir. 1953, 202 F.2d 492, we held that work performed by a watchman under contract with a steamship company was part of Isthmian's shipping business. The district court had submitted the issue to the jury which had held that the watchman's work was not part of Isthmian's business. We reversed because the district court failed to instruct the jury on the definition of "trade, business, or occupation".

> The decisive factors are the nature of the employee's work and of the principal's trade, business, or occupation. Unless the work is of such a special or separate character as would not ordinarily or appropriately be performed by the principal employer's own employees in the prosecution of its business or as an essential part thereof, it is a part of the principal's trade, business or occupation, 202 F.2d at 494.

This language does not say that the controlling question is whether the employer in fact had any employees engaged in similar activity. The test seems rather whether the employer would have to hire some workers of its own to perform the activity if it were not performed by the independent contractor; in other words, whether the activity was *essential* to the employer's business.

Our Court has clarified *Isthmian* in Massey v. Rowan Drilling Co., 5 Cir. 1966, 368 F.2d 92. Massey was employed as a welder by Gulf Oil Field Service Company, an independent contractor. Gulf was hired by Rowan Drilling Co. to repair a high drum chain guard on the draw work on one of Rowan's drilling rigs. In the course of performing the repairs, Massey slipped on a greasy floor and was injured. Massey sued Rowan. The district court granted Rowan's motion for summary judgment and we affirmed. In his appeal to our court Massey argued that the work he was performing was special work not generally done by others engaged in Rowan's business and thus it was not part of Rowan's trade or business under the Louisiana Workmen's Compensation law. We rejected Massey's interpretation of the Louisiana law and held:

> While several decisions have stressed the fact that the principal who had contracted out certain work could have employed men to perform the same work, the court in Turner v. Oliphant Oil Corp., 200 So. 513, 514 (La.Ct. App.1940), made it clear that "the method used by the oil company to salvage the casing whether by its own employee or by contracting to have it done by an independent contractor can make no difference". 368 F.2d at 95.

■■ We regard *Massey* as correctly stating the Louisiana law, in the light of *Thibodaux* and *Turner*, that the test for determining whether an activity is part of an employer's trade or business for purposes of the Louisiana Workmen's Compensation Statute is whether the particular activity is essential to the business. The fact that the employer or the industry as a whole always contracts out the activity is not controlling. This business test clearly carries out the purposes of section 23:1061—to prevent subversion of the workmen's compensation laws by an employer contracting out part of his business. If the test under this statute were whether the employer had any employees engaged in similar functions, the employer could easily subvert the statute by contracting out all of the various parts of his business. For example, if the employer were an integrated oil company, he could contract out all his drilling activity, pipeline construction and maintenance, refining, and petrochemical processing and virtually eliminate workmen's compensation coverage leaving the workers to collect from a possibly insolvent contractor. Under the essential-to-the-business test, however, all these activities would be covered and the purpose of the statute to interpose the solvency of the oil company between the worker and the contractor would be carried out.

■ We hold that the district court erred in refusing to grant Shell's motion for judgment notwithstanding the ver-

dict. It was undisputed that a heater treater was essential to Shell's business. According to *Fontenot*, as a matter of law, the heater-treater repair and maintenance was part of Shell's "trade, business, or occupation" under section 23:1061 of the Louisiana Revised Statutes. The sole remedy, therefore, to Arnold and Demesia was under the Louisiana Workmen's Compensation Laws.

The judgment below is reversed.