William F. COLE, Plaintiff-Appellant,

v.

CHEVRON CHEMICAL COMPANY, OR-ONITE DIVISION, Defendant and Third-Party Plaintiff-Appellee,

v.

MECHANICAL CONTRACTING ENGINEERS, INC. and Liberty Mutual Insurance Company, Third-Party Defendants-Appellees.

No. 29032

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

June 10, 1970.

George J. Kambur, Clark A. Richard, New Orleans, La., for appellant.

Lloyd C. Melancon, Kenneth C. Hughes, John V. Baus, New Orleans, La., for appellees.

Before BELL, AINSWORTH and GODBOLD, Circuit Judges.

AINSWORTH, Circuit Judge.

In this Louisiana-based diversity case the question of state law presented on appeal is whether the work Mechanical Contracting Engineers, Inc. (MCEI) performed for the Oronite Di-

vision of Chevron Chemical Company (Chevchem) was part of Chevchem's "trade, business, or occupation" for purposes of establishing coverage by the Louisiana Workmen's Compensation Statute, La.Rev.Stat.Ann. § 23:1061. The question of federal law presented is whether, on the existing state of the record, summary disposition of this case in the court below was proper.[1]

Chevchem hired MCEI to do general welding work at the Oronite Division Plant. Cole, an employee of MCEI, was injured while working in the course of his employment as a welder at the plant. He brought this action against Chevchem for the damages that allegedly resulted from the latter's negligence. Chevchem responded that Cole's exclusive remedy for his injury was to be found under the Louisiana workmen's compensation law since Chevchem was Cole's "statutory employer," and a workman cannot maintain a tort action under Louisiana law against his "statutory employer."[2]

Section 23:1061 of the Louisiana Revised Statutes provides that any person who "contracts out" work that is part of his trade, business, or occupation is liable to any employee of the contractor engaged in the work for workmen's compensation, to the same extent as if the contractor's employee were one of his own employees[3]. That is, the principal is the so-called "statutory employer" of the independent contractor's employees for the purpose of determining the extent of the principal's responsibility under the Workmen's Compensation Statute. The purpose of the "statutory employer" provision is to prevent the principal from avoiding his compensation responsibility by interposing an independent contractor between himself and those who perform work that is a part of his "trade, business, or occupation." Arnold v. Shell Oil Company, 5 Cir., 1969, 419 F.2d 43, 46; Malone, Principal's Liability for Workmen's Compensation to Employees of Contractor, 10 La.L.Rev. 25–27 (1949). The provision operates to the benefit of the contractor's employees when the contractor is financially irresponsible, since they may look to the principal for workmen's compensation. On the other hand, when the contractor is able to fulfill his compensation responsibilities, the provision operates to limit his employees to the maximum benefits payable under the Workmen's Compensation Statute, since the principal, as

---

1. We have concluded on the merits that this case is of the character that does not justify oral argument. Therefore, we have directed the Clerk to place the case on the Summary Calendar and to notify the parties of this action in writing. 5 Cir. R. 18; *see* Huth v. Southern Pacific Co., 5 Cir., 1969, 417 F.2d 526, 527–530; Murphy v. Houma Well Service, 5 Cir., 1969, 409 F.2d 804, 805–808.

2. In response to Cole's complaint, Chevchem asserted a third-party complaint against MCEI and its insurer, Liberty Mutual Insurance Company, on the basis of a written indemnity agreement between Chevchem and MCEI for the work performed by Cole. This appeal is taken from the District Court's dismissal of Cole's complaint.

3. La.Rev.Stat.Ann. § 23:1061 reads as follows:
 "Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed.
 "Where the principal is liable to pay compensation under this Section, he shall be entitled to indemnity from any person who independently of this Section would have been liable to pay compensation to the employee or his dependent, and shall have a cause of action therefor."

their "statutory employer," is, like the contractor, immunized from tort liability to the employees by the exclusive-remedy provision of that act. La.Rev.Stat.Ann. § 23:1032.

The District Court granted a summary judgment in favor of Chevchem on the ground that the work performed by MCEI and Cole was part of Chevchem's "trade, business, or occupation." Cole appeals on the ground that a trial was necessary to the proper determination of this issue.

Rule 56(c) of the Federal Rules of Civil Procedure provides that a summary judgment may be granted only when the record shows that " * * * there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In this diversity case we decide the propriety of the summary judgment granted below in accordance with the federal standards fixed in Rule 56(c). As we have said:

> "This principle is the corollary to the rule of this Court that the sufficiency of evidence to require jury submission in diversity cases is a question of federal law. To be sure, in proceedings on motions for summary judgment questions of state law will arise in determining the materiality of particular facts to the claims and defenses of the parties and the factual elements required to establish the claims or defenses of the moving party, but whether a trial is necessary is a matter of federal law."

Lighting Fixture & Elec. Sup. Co. v. Continental Ins. Co., 5 Cir., 1969, 420 F.2d 1211, 1213 (citations omitted).

■ In considering a motion for summary judgment, the trial court must determine whether a genuine issue of material fact exists rather than how that issue should be resolved, and a summary judgment should be granted only when the truth is clear. Lighting Fixture & Elec. Sup. Co. v. Continental Ins. Co., 5 Cir., 1969, 420 F.2d 1211, 1213; United States v. Burket, 5 Cir., 1968, 402 F.2d 426, 430. Even though the basic facts are undisputed, a summary judgment may be improper if the parties disagree regarding the material factual inferences that properly may be drawn from these facts. See, e. g., N. L. R. B. v. Smith Industries, Inc., 5 Cir., 1968, 403 F.2d 889, 893; Keating v. Jones Development of Missouri, Inc., 5 Cir., 1968, 398 F.2d 1011, 1013.

■ Applying these principles to this case, we determine that the District Court should not have granted a summary judgment in favor of Chevchem on the issue whether Chevchem was the "statutory employer" of Cole. Material factual issues remain to be tried, and Chevchem was not entitled to a judgment as a matter of Louisiana law. Consequently, we reverse the judgment of the District Court and remand the case for further proceedings.

■ This Court has frequently had occasion to determine whether particular work tasks are to be considered as part of an enterprise's "regular operations" for purposes of section 23:1061 of the Louisiana Revised Statutes. We have kept in mind in making these determinations that the workmen's compensation law should be liberally construed with a view to coverage, regardless of whether the contractor's employee or the principal is the party asserting coverage. E. g., Arnold v. Shell Oil Company, 5 Cir., 1969, 419 F.2d 43, 47; Isthmian S. S. Co. of Delaware v. Olivieri, 5 Cir., 1953, 202 F.2d 492, 494; see Thibodaux v. Sun Oil Co., 40 So.2d 761, 766 (La.Ct. App.1949), aff'd, 218 La. 453, 49 So.2d 852 (1950). In Arnold v. Shell Oil Company, 5 Cir., 1969, 419 F.2d 43, 50, we stated that "the test for determining whether an activity is part of an employer's trade or business * * * is whether the particular activity is essential to the business." Under this test, the fact that the employer or the industry as a whole always contracts out the activity is not controlling. Id.; Massey v. Rowan Drilling Co., 5 Cir., 1966, 368 F.2d 92, 95; Turner v. Oliphant Oil Corporation, 200 So. 513, 514 (La.Ct.App.1940).

Similarly not controlling is the fact that the employer hires workers of its own to perform activity related to the activity it contracts out. Instead, the decisive factors are the nature of the activity being contracted out, the nature of the principal employer's business, and the relationship between the particular activity and the broader business operation. In this regard, the basic inquiry is not whether the activity contracted for is helpful or necessary to the operation of the business enterprise, for we may presume that businessmen in the normal conduct of their affairs will not contract for work that is neither helpful nor necessary. Rather, we inquire whether the particular activity is so related to the principal employer's conduct of his trade, business, or occupation that it should be considered as an essential part thereof.

The determination of the essentiality vel non of a particular activity to a given business enterprise will turn upon the facts. In this case, Cole, employed as a welder and pipefitter by MCEI, was allegedly injured when he slipped and fell while helping a fellow employee carry a piece of steel at Chevchem's Oronite Division Plant. The affidavit of the Division's manager of operations states in part that the business of the Division

"consisted of, but was not limited to the general manufacture and production of petrochemicals from raw products, construction on the premises which entailed, among other things, cutting, erecting, joining and welding of metal equipment, fixtures, grills, machinery, support members, walkways and other objects necessary and required for such manufacture and production; that an integral portion of the business * * * at all times pertinent included the maintenance, renovation, repair and upkeep of said equipment and required the employment of mechanics and welders * * *."

Chevchem employed six welders of its own. It also contracted out welding work to several contracting firms, among which was MCEI. Cole, by affidavit, states that at all relevant times he

"was engaged in demolishing old facilities, which were in the middle and in the way of the new facilities which were being erected by [Chevchem]; that the [Chevchem] welders employed on the premises did only spot welding or valve changing or repaired leaks which is under normal maintenance procedures, whereas affiant was charged with demolishing obsolete structures and facilities and was employed for the erection of new facilities and structures in order that [Chevchem] could carry on its engaged business;

"Affiant further declares that [Chevchem] was not equipped to do such work as above described; that, for example, 100 ton cranes had to be brought to the premises in order to be able to perform the said work."

On this record, we are of the opinion that the question whether the work performed by MCEI and Cole was part of Chevchem's trade, business, or occupation cannot be determined as a matter of law. In cases such as Arnold v. Shell Oil Company, 5 Cir., 1969, 419 F.2d 43, and Allen v. United States Fire Insurance Company, 222 So.2d 887 (La. Ct.App.1969), the factual picture of the principal employer's business operations, and of the part the activity in issue played in those operations, was well defined. Here, on the other hand, the picture of Chevchem's operations at its Oronite Division Plant is not clear. That Chevchem is engaged in the production of petrochemicals derived from hydrocarbons is not conclusive of the issue whether all types of welding work performed at its Oronite Division Plant—demolition and construction work, as well as "repair" and "maintenance" work—are part of the "regular operations" at the Plant. Further factual development is necessary. See, e. g., N. L. R. B. v. Smith Industries, Inc., 5 Cir., 1968, 403 F.2d 889, 893. This case, therefore, must be remanded.

Reversed and remanded.