431 F.2d 1229
 Frank BURRAGE, Plaintiff-Appellee,
v.
FLOTA MERCANTE GRANCOLOMBIANA, S.A., Defendant-Appellant.
 No. 23700.
 United States Court of Appeals, Fifth Circuit.
 Sept. 10, 1970
Rehearing Denied Oct. 28, 1970.
 
 Benjamin W. Yancey, Walter Carroll, Jr., New Orleans, La., for defendant-appellant; Terriberry, Carroll, Yancey & Farrell, New Orleans, La., of counsel.
 Stuart A. McClendon, Metairie, La., George W. Reese, Reese & Abadie, New Orleans, La., for plaintiff-appellee.
 A. R. Christovich, Jr., New Orleans, La., for New Orleans Stevedoring Co., third party defendant-appellee; Christovich & Kearney, New Orleans, La., of counsel.
 Before JOHN R. BROWN, Chief Judge, AINSWORTH and GODBOLD, Circuit Judges.
 JOHN R. BROWN, Chief Judge:
 
 
 1
 With almost ironic coincidence this, as the earlier one of Gutierrez,[1] is a beanworthy case. Burrage, a Sieracki-- Ryan-- Yaka pseudo seaman, was injured on a New Orleans wharf while working as a longshoreman in the employ of Stevedore[2] during the discharge of Shipowner's SS Ciudad de Nieva when he slipped on a coffee bean that had come from the ship's cargo earlier that morning or the day before. The District Court in a judge trial held Shipowner liable for substantial damages and rejected Shipowner's plea of contributory negligence and its claim against Stevedore for WWLP indemnity under Ryan.[3]
 
 
 2
 Shipowner attacks each of these actions and, for good measure, throws in a little Louisiana problem by invoking the substitute employer defense under 6 of the Louisiana Compensation Act (LRS, 23:1061 and 1032). On these points Shipowner fails, but we hold indemnity should have been allowed and reverse as to that.
 
 
 3
 The facts are neither conflicting nor complex and we accept all as above the Plimsoll line of F.R.Civ.P. 52(a).[4] Burrage was working on the dock, his job being to fasten cargo to the ship's cargo gear. It seems more or less agreed that the coffee beans on the wharf had come from the discharge of bag coffee the day before. At any rate, cargo other than bagged coffee was being discharged when the injury occurred, and for some time prior to that. When the longshoremen arrived on the dock in the morning to commence work coffee beans were, in the words of Burrage, 'scattered all over.' About 20 minutes before his injury he and a working companion asked one of the other longshoremen to bring a broom from Stevedore's gear shed in order for them to sweep up the spilled beans in the work area. Neither broom nor sweeper arrived, and Burrage injured his back when he slipped on a coffee bean.
 
 
 4
 Of course, maximizing the extent of the spilled beans, Burrage's awareness of having to work while standing in, on, over, around or against coffee beans plus his acknowledgment that he 'had to get rid of (the coffee beans) someway or another if I was going to work there', put him in the strategic/tactical dilemma faced often by those who pursue a damage claim.
 
 
 5
 Perhaps it was the Judge's effort to draw the middle line in the context of Shipowner's claim of contributory negligence and the indemnity claim against Stevedore that led him to his finding. The Judge first held the cargo unseaworthy on Gutierrez' standards.[5] In describing the Stevedore's response to the obligations imposed on it the Judge found that if '* * * the leakage was excessive, then the foreman of the longshoreman would stop the work and the work area would be swept so that work could be continued safely.' This was then followed by the finding that it 'is conclusive that when this accident occurred there was not an excessive leakage of beans on the wharf, but nonetheless, there were beans on the wharf as a result of leakage.'[6]
 
 
 6
 But we do not think that decision compels a resolution of this enigmatic riddle. The facts more than justify the conclusion that the bags 'were not fit for their intended use and were defective' and this 'caused the coffee beans to be scattered along the wharf'. Whether of fact, or law, or a little bit of both, the Judge was entitled to conclude that 'coffee bags intended to carry coffee beans are defective if they contain holes in them so as to cause leakage on the wharf area while they are being discharged from the vessel.'[7] And so too was the apex maritime law conclusion that 'bags * * * that leaked' coffee beans 'were unfit for their intended use' and because of this 'made the vessel * * * unseaworthy'.[8]
 
 
 7
 These findings and conclusions make it clear with respect to the ship that on the two step analysis implicit in the Trawler Racer[9] the Judge determined that the bags were not 'reasonably fit' and in its wake came the unavoidable consequences of the breach of the absolute duty to furnish a seaworthy vessel.
 
 
 8
 Thus Shipowner fails on its basic attack on the decree against it. It fares no better on its contention that the trial Court should have held Burrage guilty of contributory negligence as a complete or substantially partial defense. Whether the conduct of the injured employee met the standard of the ordinarily prudent person is almost invariably a question of fact. In assaying the problem the trier is entitled to take into consideration the realities of the situation, the economic dependence of the worker on continued employment, and the law's general approach that in fostering industrial safety the burden of noncompliance with standards of care is ordinarily placed directly on the employer, not wholly on the injured victim. Manning v. M/V Searoad, 5 Cir., 1969, 417 F.2d 603, 1970 A.M.C. 145. It was reasonable under the circumstances for the workmen to continue working.
 
 
 9
 But the nature of the obligations wrapped up in the Ryan-WWLP concept called for quite different results in the Shipowner vis-a-vis Stevedore's indemnity claim.[10] The notion of workmanlike performance certainly encompasses an obligation by the contractor to take notice of those deficiencies and hazards likely to give rise to damage to life, limb, or property and then take requisite action depending on the nature of the relationship of the parties and their contractual obligations, express or implied, either to eliminate or minimize the hazard or to stop work until the situation is corrected. T. Smith & Son Inc., v. Skibs A/S Hassel, 5 Cir., 1966, 362 F.2d 745, 1966 A.M.C. 1700; Nicroli v. Den Norske Afrika, 2 Cir., 1964, 332 F.2d 651, 1964 A.M.C. 217; Albanese v. N.V.N.A.S.M., 2 Cir., 1968, 392 F.2d 763, 1968 A.M.C. 800, rev'd on other grounds, 393 U.S. 995, 89 S.Ct. 482, 21 L.Ed.2d 461. Of course, there can be no question, either on the record or the findings, that Stevedore and that Burrage and others working with him were aware of the existence of the beans on the dock and looked upon this as a sufficient hazard to safe operations as to lead them to request that brooms and sweepers be sent. Such knowledge from injured workmen or fellow workers may be quite enough to set in motion the duties under WWLP without bringing it home directly to a supervisory employee. T. Smith & Son, supra; United States Lines v. Williams, 5 Cir., 1966, 365 F.2d 332, 335, 1966 A.M.C. 2418, 2423.
 
 
 10
 Stevedore does not really undertake to say that the presence of beans on the wharf was not a hazardous condition. It simply emphasizes the Trial Judge's notion that this was not 'excessive'. But this really presents-- and we believe it is the explanation for the Trial Judge's preoccupation with it-- notions of negligence, ordinary care and the like. But WWLP is not measured by such restrictive terms. As the brief for Burrage, the injured man, points out that liability against Shipowner rests not upon charge, proof, and finding that the wharf was unwharfworthy. Rather, it rests on the claim, proof and finding that the ship, through defective cargo (coffee bags), was unseaworthy. Whether the spillage onto the dock was 'excessive' enough to warrant a finding of negligence, it and hazards flowing from it were quite enough to compel a conclusion that workmanlike performance called for Stevedore to do something, and it did nothing. And of course, neither on evidence nor on finding could we or the Trial Court conclude that there was any action on the part of Shipowner, its crew or representatives 'sufficient to preclude recovery' in the Weyerhaeuser[11] concept.
 
 
 11
 As both Shipowner and Stevedore urged the point and it now becomes material as to either one or both, we must face up to the substituted employer bar of 6 of the Louisiana Compensation Act. That section provides, in effect, that if the work being done for a principal by a contractor is part of the principal's 'trade, business or occupation' the principal is liable to pay compensation to any employee of the contractor. LRS, 23:1061. If that is met, the exclusive remedy provision of the Act, LRS 23:1032, comes into play to cut off any damage suit claim. Although writers, and occasionally this Court, extoll this as a protection to employees who might find themselves remediless if the contractor turns out to be a financially irresponsible fly-by-night, it is in the experience of this Court at least nearly always invoked as a bar to the third party suit, a factor which we recently took into account in Gorsalitz v. Olin Mathieson Chemical Corp., 5 Cir., 1970, 429 F.2d 1033; See also, Arnold v. Shell Oil Co., 5 Cir., 1969, 419 F.2d 43; Cole v. Chevron Chem. Co., 5 Cir., 1970, 427 F.2d 390.
 
 
 12
 But our problem here is not that of Gorsalitz and Arnold, supra, to define 'the trade, occupation' issue. Indeed, we may assume without deciding, that since the Sieracki pseudo seaman status rests on the historical fact that some seaman, sometime, on some vessel did the work in question-- which is clearly true as to loading and discharge of cargo-- the work being done for Shipowner by Stevedore was part of the 'trade, business or occupation' of Shipowner.
 
 
 13
 The unless here is unless the uniformity of admiralty read into Article III of the Constitution makes the state law ineffectual as to injuries within the maritime jurisdiction of the United States as extended.[12] Although the injuries here did not result from the operation or defects of some part of the vessel's equipment, they did come from unseaworthiness of the vessel in the form of unseaworthy cargo and this is sufficient to make it 'caused by a vessel on navigable waters'. 46 U.S.C.A. 740 (1958).
 
 
 14
 For our purposes we think we may start with Gutierrez, supra, whatever might have been the state of the law previous to it. This clearly imposed on the vessel owner the consequences of shore-based injuries resulting from the unseaworthiness of the cargo/ship. But, as with all of these cases, Gutierrez is but a part of a very larger dynamic field. Part of it is the Ryan WWLP concept which the Court fashioned as an incident to the relationship between ship and the contracting service company. The Court has fashioned both the substantive right and remedy to accord to the pseudo seaman and to the shipowner and others in the chain of operational hierarchy. This has been done as an integral part of maritime law.
 
 
 15
 If-- and there cannot be any real if at all-- the WWLP notion is an integral part of this court-created maritime law, then a state principle, statutory or Judge-made, which is a bar to effectual enforcement of the maritime right cannot constitutionally be applied since it works material prejudice to the characteristic features of general maritime law and interferes with the proper uniformity of that law contrary to Article 3, 2 to the Constitution, (see also Article 1, 8).
 
 
 16
 Southern Pacific Co. v. Jensen, 1916, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086;
 
 
 17
 Chelentis v. Lukenbach Steamship Company, 1917, 247 U.S. 372, 38 S.Ct. 501, 62 L.Ed. 1171;
 
 
 18
 Knickerbocker Ice Co. v. Stewart, 1919, 253 U.S. 149, 40 S.Ct. 438, 64 L.Ed. 834.
 
 
 19
 We therefore conclude that in this situation 6 is not an obstacle either by barring the vicarious seaman's claim against the shipowner or the successive actions over as all 'throw out the lifeline'. Grigsby v. Coastal Marine Service of Texas, Inc., 5 Cir., 1969, 412 F.2d 1011, 1039, cert. dism'd, 396 U.S. 1033, 90 S.Ct. 612, 24 L.Ed.2d 531. And whatever force and effect remains in Kent,[13] to the extent that it reaches a different conclusion, must now yield to Gutierrez. This has become all the more critical since this Court has recently held that under the Louisiana Compensation Act and Louisiana principles the employer is not liable for indemnity to the third party who impleads the employer in the workers' third party suit for non-maritime injuries. General Electric Co. v. Cuban American Nickel Co., 5 Cir., 1968, 396 F.2d 89. By virtue of these Louisiana principles the clearly recognized substantive rights flowing from WWLP are frustrated by 6 and it must fall under the Supremacy Clause.
 
 
 20
 The upshot is that the decree was correct as between Shipowner and Burrage but it must be modified to permit recovery by Shipowner against Stevedore.[14]
 
 
 21
 Affirmed in part, modified in part, and remanded.
 
 
 
 [1]
 Gutierrez v. Waterman Steamship Corp., 1963, 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297, 1963 A.M.C. 1649
 
 
 [2]
 New Orleans Stevedore & Co., impleaded by Shipowner as a third party defendant
 
 
 [3]
 Breach of the warranty of workmanlike performance. Ryan Stevedoring Company, Inc. v. Pan-Atlantic Steamship Corporation, 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133, 1956 A.M.C. 9. Hebert v. D/S Ove Skou, 5 Cir., 1966, 365 F.2d 341, 1966 A.M.C. 2223
 
 
 [4]
 The Judge really did not make any finding on the indemnity action
 
 
 [5]
 F.F. II: 'The bags containing coffee beans were in many instances in a condition which caused leakage of the beans onto the wharf. The substantial competent testimony was to the effect that the discharge of coffee beans from the vessel in bags that were not fit for their intended use and were defective, caused the coffee beans to be scattered along the wharf.' This was carried forward and translated into unseaworthiness of the vessel in C.L. V
 
 
 [6]
 Both From F.F. III
 
 
 [7]
 C.L. III
 
 
 [8]
 C.L. V
 
 
 [9]
 Mitchell v. Trawler Racer, Inc., 1960, 362 U.S. 539, 550, 80 S.Ct. 926, 933, 4 L.Ed.2d 941, 948, 1960 A.M.C. 1503, 1512, 1513: 'What has been said is not to suggest that the owner is obligated to furnish an accident-free ship. The duty is absolute, but it is the duty only to furnish a vessel and appurtenances reasonably fit for their intended use. The standard is not perfection but reasonable fitness; not a ship that will weather every conceivable storm or withstand every imaginable peril of the sea, but a vessel reasonably suitable for her intended service.'
 
 
 [10]
 Indemnity was denied by nothing more than the unilluminating conclusion of law that the 'third party claim of (Shipowner) against (Stevedore) is likewise dismissed.'
 
 
 [11]
 Weyerhaeuser Steamship Co. v. Nacirema Operating Company, Inc., 1958, 355 U.S. 563, 567, 78 S.Ct. 438, 2 L.Ed.2d 491, 1958 A.M.C. 501; Cia Maritima Del Nervion v. James J. Flanagan Shipping Corp., 5 Cir., 1962, 308 F.2d 120, 123; Hebert v. D/S Ove Skou, supra, 365 F.2d at 347, 1966 A.M.C. 2223, at 2230
 
 
 [12]
 See 46 U.S.C.A. 740 (Supp.1970). Continental Oil Co. v. London Steam-Ship Owners Mut. Ins. Ass'n., 5 Cir., 1969, 417 F.2d 1030, cert. denied, 1970, 397 U.S. 911, 90 S.Ct. 911, 25 L.Ed.2d 92; Huson v. Chevron Oil Co., 430 F.2d 27, 5 Cir., 1970
 
 
 [13]
 Kent v. Shell Oil Co., 5 Cir., 1961, 286 F.2d 746; Koninkylke Nederlandsche Stoomboot Maalschappy v. Strachan, 5 Cir., 1962, 301 F.2d 741
 
 
 [14]
 We remand for determination, if necessary, by the trial Court of the amount of the indemnity including the usual costs, attorneys fees, etc