590 F.2d 594
 George E. BLANCHARD, Plaintiff-Appellant, Cross-Appellee,
v.
ENGINE AND GAS COMPRESSOR SERVICES, INC. and Gulf Oil
Corporation, Defendants-Appellees,
v.
COMMERCIAL UNION INSURANCE COMPANY, Intervenor-Appellee,
Cross-Appellant.
 No. 75-4216.
 United States Court of Appeals,
Fifth Circuit.
 Feb. 21, 1979.
 
 Appeals from the United States District Court for the Southern District of Mississippi; William Harold Cox, Judge.
 
 
 1
 Harry R. Allen, Gulfport, Miss., Walter E. Ross, Jr., Biloxi, Miss., for plaintiff-appellant, cross-appellee.
 
 
 2
 George E. Morse, Gulfport, Miss., for Gulf Oil.
 
 
 3
 Thomas L. Stennis, II, Gulfport, Miss., Felicien P. Lozes, New Orleans, La. for Commercial Union Ins.
 
 
 4
 Sherman L. Muths, Jr., Gulfport, Miss., for Engine Com. Ser.
 
 
 5
 Claude D. Vasser, New Orleans, La., for defendants-appellees.
 
 
 6
 Before BROWN, Chief Judge, GEWIN and TJOFLAT, Circuit Judges.
 
 PER CURIAM:
 
 7
 The Court has determined that this appeal presents an important issue of Louisiana law that the Supreme Court of Louisiana should appropriately decide. 1978, 575 F.2d 1140. We will, therefore, defer our decision in this matter pending certification of the issue to the Supreme Court of Louisiana.
 
 
 8
 Following our practice,[1] we requested that the parties submit a proposed statement of facts and proposed agreed certificate of the questions for decision. Although the parties have agreed on the statement of facts, they submitted separate proposed questions. We have, therefore, drafted an alternate set that we think incorporates those of appellant and appellee.
 
 
 9
 CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT TO THE SUPREME COURT OF LOUISIANA PURSUANT TO LOUISIANA REVISED STATUTES ANNOTATED § 13:72.1 (WEST).
 
 
 10
 TO THE SUPREME COURT OF LOUISIANA AND THE HONORABLE JUSTICES THEREOF:
 
 
 11
 It appears to the United States Court of Appeals for the Fifth Circuit that the above-styled case in this Court involves a question or proposition of the law of the State of Louisiana that is determinative of the cause, and there appears to be no clear, controlling precedent in the decisions of the Supreme Court of the State of Louisiana. This Court certifies the following questions of law to the Supreme Court of Louisiana for instructions concerning said question of law, based on the facts recited herein, such case being an appeal from the United States District Court for the Eastern District of Louisiana.
 
 I. Style of the Case
 
 12
 The style of the case in which this certificate is made is "George E. Blanchard, Plaintiff-Appellant, Cross-Appellee v. Engine and Gas Compressor Services, Inc. and Gulf Oil Corporation, Defendant-Appellees, v. Commercial Union Insurance Company, Intervenor-Appellee, Cross-Appellant, Case Number 75-4216, United States Court of Appeals, Fifth Circuit", on appeal from the United States District Court for the Southern District of Mississippi.
 
 II. Statement of Facts
 
 13
 George E. Blanchard, a mechanic employed by Engine and Gas Compressor Services, Inc. (Engine and Gas), was injured at the West Bay Gas Compression station owned by Gulf Oil Corporation (Gulf). He filed suit for damages against his employer and Gulf under the Jones Act and General Maritime Law, but the District Court dismissed the claim on the Defendants' summary judgment motion. Although Blanchard appealed, summary judgment in favor of the Defendants on the Jones Act and General Maritime Law was affirmed. 575 F.2d at 1143.
 
 
 14
 A third-party's tort suit against Gulf on diversity grounds proceeded to trial. The lower court, however, sustained a motion for a directed verdict against the Plaintiff on grounds that Blanchard was a statutory employee of Gulf under the Louisiana Workmen's Compensation Act[2] and therefore his right to recovery was limited to workmen's compensation. Blanchard appealed the directed verdict, and this Court decided that guidance from the Louisiana Supreme Court was necessary for final disposition of the appeal. 575 F.2d at 1145.[3]
 
 
 15
 At the time of his injury on May 18, 1974, George Blanchard was thirty-two (32) and married and had two children. He had been a mechanic since he was fourteen (14) years of age. His formal education consists of a GED diploma from high school and various mechanics schools in the Army. At the time of his injury, Engine and Gas was under contract to Gulf to furnish mechanics for compressor engine repairs at Gulf's West Bay Compressor Station. The compressor station is located in shallow waters near a marshy area in the Mississippi River delta about thirty minutes by crewboat from Venice, Louisiana. The facility included four individual compressor buildings that housed a total of sixteen compressors. It was a focal point of Gulf's West Bay field to gather natural gas produced by approximately 160 oil and gas wells in the area. The gas was transported by 16 compressors totaling 17,000 horsepower. The compressor engines are required to run continuously twenty-four (24) hours, a day, 365 days a year.
 
 
 16
 Blanchard and Pollard Lee, another employee of Engine and Gas, were repairing a compressor when Blanchard was injured. Blanchard testified that he asked the Gulf supervisor if they could drain the oil from the compressor engine crank case before doing any work, but the supervisor refused. As a result, Blanchard became covered with oil, and he slipped and injured his back when a 150 pound compressor bearing cap fell on him as he was trying to replace it. After a rest, Blanchard finished the work, but subsequently, his back problems grew worse. He was unable to return to work for eight months. Eventually, he had lumbar disc surgery and suffered a permanent-partial disability.
 
 
 17
 The compressor engine in question was 2,000 horsepower and contained approximately 220 gallons of crank case oil. The bearing cap was a solid piece of iron, about eight to eight and one-half inches wide, fifteen inches tall, and twelve inches thick. It was designed to mate with the contour of the shaft. The oil in the crank case was about ten inches deep.
 
 
 18
 In addition to the allegations of negligence against Gulf for refusing permission to drain the crank case oil, Blanchard alleges negligence for Gulf's failure to furnish adequate manpower for assistance and in permitting Blanchard to work continuously for thirty-six (36) hours without rest to correct an emergency flare situation created by the engine breakdown.
 
 
 19
 Gulf's production superintendent, Howard Kesterson, conceded that Gulf did not have the personnel available to handle the type of job Blanchard was performing at the time of his injury, requiring the contract with Engine and Gas, as they were specialists.
 
 
 20
 At the time of his injury, Blanchard had been employed by Engine and Gas for fourteen (14) to fifteen (15) months. He was assisted by another employee of Engine and Gas, Pollard Lee, who began working at West Bay in 1971. As a specialist mechanic in compressor engines, Blanchard was required to know more about big engines than the owners. The work of Blanchard and Lee at the West Bay Station was different than that required of a routine mechanic. Gulf did not have the personnel available to handle this type of job under the circumstances existing at the station. Gulf's superintendent Kesterson testified that its employee, Pete Leverde, was a mechanic and was used by Gulf in all respects for routine maintenance as well as overhauls. On the other hand, Blanchard testified that Pete Leverde did not have the same qualifications to work on compressor engines as Blanchard, and that he had never seen Leverde do the kind of work he was doing on the night Blanchard was hurt. He had been at the station eight months or better. He also stated that he had been to nearly every Gulf station in the district and had never seen Gulf men do this kind of major repair. Blanchard explained that the type of problem he was attempting to repair had only occurred four times since he had been in compressor work. Subcontractor Packard, Inc. furnished employees for routine maintenance on the engines and cleanup operations. Packard's employee Bobby Clifton testified that the incident in question was major repair and that he had never seen it done before. He further states that he was not capable of performing the kind of repairs in which Blanchard was engaged. Lee testified that the change of the bearing cap in question was an infrequent thing that he had only seen done one time before at West Bay. Gulf's Production Supervisor, Clark, testified that when Gulf had a major breakdown, it called Engine and Gas.
 
 
 21
 Lee testified that neither Leverde nor other Gulf employees were doing the type of major repair work that Blanchard and Lee were performing.
 
 
 22
 According to Herbert Ellis, another employee of Engine and Gas, the changing of the bearing cap in the job being performed, was major repair work. Ellis testified that the Engine and Gas contract with Gulf for repair of compressor engines is the same sort used with Shell and Exxon. Ellis also stated that the customers hire Engine and Gas to do the work the customers cannot do and that their biggest competitors are the customers because they try to do the work themselves.
 
 
 23
 Engine and Gas secured and paid workmen's compensation benefits to Blanchard through carrier, Commercial Union Insurance Company, which has intervened in this cause against Gulf.III. Questions for the Supreme Court of Louisiana
 
 
 
 [4]
 
 
 
 
 24
 1. What is the effect of Reeves v. Louisiana and Arkansas Ry., 282 So.2d 503 (La.1973), on the "essential to business test?" See Freeman v. Chevron Oil Co., 5 Cir., 1975, 517 F.2d 201; Arnold v. Shell Oil Co., 5 Cir., 1969, 419 F.2d 43.
 
 
 25
 a. In determining whether a plaintiff is a statutory employee under La.Rev.Stat.Ann. § 23:1061, would the Louisiana Supreme Court use that test to determine whether certain activity is "part (of an employer's) trade, business, or occupation?"
 
 
 26
 b. In light of Reeves and decisions of the appellate courts of Louisiana, was George Blanchard's conduct at the time of his injury "part of (Gulf Oil Corporation's) trade, business, or occupation" within the meaning of La.Rev.Stat.Ann. § 23:1061 (West)?
 
 
 27
 c. If George Blanchard was a statutory employee, did his activity fall under a "major repairs" exception?
 
 
 28
 The entire record in this case, together with copies of the briefs of the parties, the proposed questions of law (both the parties' and the Court's), and memoranda thereon are transmitted herewith.
 
 
 29
 CERTIFIED.
 
 
 
 [1]
 See Wansor v. Hantscho, 5 Cir., 1978, 580 F.2d 726
 
 
 [2]
 La.Rev.Stat.Ann. § 23:1061 (West):
 Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed.
 Where the principal is liable to pay compensation under this Section, he shall be entitled to indemnity from any person who independently of this Section would have been liable to pay compensation to the employee or his dependent, and shall have a cause of action therefor.
 
 
 [3]
 As we pointed out in our original opinion, 575 F.2d at 1144,
 (i)n Arnold v. Shell Oil Co., 5 Cir., 1969, 419 F.2d 43, Judge Wisdom for us perceived that the guiding light in Louisiana on defining a statutory employee was whether the employee was engaged in any activity "essential to the business" of the principal employer. Six years later, however, through Judge Ainsworth in Freeman v. Chevron Oil Co., 5 Cir., 1975, 517 F.2d 201, we concluded that this test had been changed by an intervening Louisiana court decision.
 This conclusion was based on the post-Arnold Louisiana Supreme Court opinion of Reeves v. Louisiana & Arkansas Ry., La., 1973, 282 So.2d 503, in which a construction employee, who was injured in building a new coking unit at a Humble oil refinery, was held not to be a statutory employee of Humble:
 Thus, it was not Humble's business practice to engage in new construction of this type and magnitude, nor does the record support a conclusion that this type work was customarily done by Humble or other employers similarly situated. The record does not support a conclusion that Humble is a statutory employer. See Thibodaux v. Sun Oil Co., 218 La. 453, 49 So.2d 852 (1950) and Horrell v. Gulf & Valley Cotton Oil Co., Inc., 15 La.App. 603, 131 So. 709 (1930).
 Id. at 508.
 In Freeman and in our prior opinion in this case, this Court observed that the "essential to the business" test is criticized, in particular, because an employer "does not contract for work by independent contractors . . . unless it is helpful and necessary to the operation of its business enterprise." In Freeman, the Court observed ". . . if every employee of such an independent contractor thereby becomes a statutory employee . . . , the concept of statutory employee would be expanded beyond practical limits and lead to ridiculous consequences. We decline to reach such an unsound result." Id. at 206. A. Larson, the law of workmen's compensation, § 49.12 at 9-23 to 9-24 (1973).
 
 
 [4]
 We repeat what we have often said in the past:
 The particular phrasing used in the certified question is not to restrict the Supreme Court's consideration of the problem involved in the issues as the Supreme Court perceives them to be in its analysis of the record certified in this case. This latitude extends to the Supreme Court's restatement of the issue or issues and the manner in which the answers are to be given, whether as a comprehensive whole or in subordinate or even contingent parts.
 Martinez v. Rodriquez, 5 Cir., 1968, 394 F.2d 156, 159, n. 6.