REGAN, Judge.
The plaintiff, George Palmer, initially filed this suit against the defendant, Wille-met-Stouse Electric Company, endeavoring to recover the amount of $84,240.00 representing damages for personal injuries incurred by him when he fell over a conduit which he asserts were caused by the negligence of this defendant in placing such an impediment in a doorway through which he was required to move a heavy scaffold.
The plaintiff, upon further reflection amended his petition to include therein Southern Bell Telephone and Telegraph Company and the Boeing Company as parties defendant, predicated upon the hypothesis that the Telephone Company was at fault in placing a conduit pipe containing telephone cable in the doorway, approximately eight inches above floor level, and that the Boeing Company was the owner of and responsible for the condition of the premises wherein the accident occurred.
The New Amsterdam Casualty Company intervened herein endeavoring to recover compensation payments made to the plaintiff as the insurer of Sidney N. Prats Sheet Metal Works, his employer.
The Boeing Company filed a motion for summary judgment and also pleaded the exceptions of no right or cause of action, predicated on the fact it was not the owner of the premises wherein the accident occurred. Moreover, Boeing asserted, as an additional defense, that it is the statutory employer of the plaintiff, since he was a workman employed by one of its subcontractors.
From a judgment of the lower court maintaining the defendant’s motion for summary judgment and the exceptions of no right or cause of action, the plaintiff has prosecuted this appeal.
The record discloses that the only allegation which caused Boeing to be made a party defendant herein is Article V of the plaintiff’s supplemental petition, wherein he asserted:
“That the Boeing Company was the owner of and responsible for the premises upon which this trap was constructed.”
An affidavit submitted in support of this defendant’s motion for summary judgment, together with the contract between it and the National Aeronautics and Space Administration, make it quite obvious that the property involved herein is owned by the United States Government and not by the Boeing Company.
The Boeing-NASA contract imposes upon Boeing the obligation for renovation of the Michoud facility. However, any additions or alterations made to the property pursuant to the contract inure to the Federal Government. The relevant clause thereof reads:
“Title acquired by the Government pursuant to the Clause of the General Provisions of this contract entitled ‘Government Property’ shall vest directly in the Government. The contractor shall include in each subcontract or purchase order, appropriate language reflecting this intent.”
Thus, at the very inception hereof it is evident from the foregoing clause that there *375 is no merit to the assertion made by the plaintiff with respect to the ownership of the premises by the Boeing Company.
In addition thereto, the defendant points out that the plaintiff’s suit against it should be dismissed without leave to amend his petition for the reason that even if proper allegations of negligence were inserted therein, he wortld not possess an action ex delicto against it. The theory upon which this contention is predicated, is that Boeing is the statutory employer of the plaintiff, so that his only right of action against it emanates from the rationale of the Louisiana Workmen’s Compensation Act.
The record discloses that Boeing was under contract with NASA, an agency of the United States Government, for the primary purpose of constructing first-stage boosters for a rocket possessing the extravagant name of “Saturn”. Boeing in turn subcontracted a portion of its work to the Landis Construction Company, Inc. Landis then subcontracted a portion thereof under its •contract with Boeing to J. F. O’Neil, Mechanical Contractors. O’Neil in turn subcontracted part of its work to Sidney Prats Sheet Metal Works, the plaintiff’s employer. The record further reveals that the plaintiff was injured at the Michoud plant while in the employment of Prats, which company, as we have said, was working under its O’Neil contract.
The pertinent portion of the Workmen’s Compensation Act, R.S. 23 :1061, reads as ■follows:
“Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed.
“Where the principal is liable to pay compensation under this Section, he shall be entitled to indemnity from any person who independently of this Section would have been liable to pay compensation to the employee or his dependent, and shall have a cause of action therefor.” (Emphasis added.)
Initially it is conceded by the plaintiff that the above section would afford tort immunity to the defendant if it is applicable to the facts hereof. The defendant also concedes that the work of renovating the Michoud facility is not part of its trade, business, or occupation, since its business is rockets rather than plant construction.
Therefore, in view of the foregoing concessions, an interesting question posed for this court’s consideration is whether the subcontract under which the plaintiff’s employer was working constituted a part of the work which Boeing “had contracted to perform”, so as to make Boeing a statutory employer within the scope of R.S. 23:1061, and consequently not required to respond to the plaintiff’s action ex delicto.
It is the plaintiff’s contention that the Boeing Company is not the contractor for the renovation work to be performed in the Michoud facility. He insists that while Boeing may be contractually bound to NASA in other respects, it did not obligate itself to undertake the execution of the work upon which the plaintiff was injured, but that other tradesmen would perform the necessary renovations.
*376 The Boeing-NAS A contract provides that the performance thereof by Boeing is predicated on the fact that NASA would supply the facilities, including the appropriate space in the Michoud plant, necessary for the performance of its work. While Boeing is to be paid on a cost-plus basis for creating the Saturn boosters, the contract stipulates that no percentage shall be paid to Boeing for money expended for the renovation or installation of plant facilities. In view of this fact, the plaintiff laboriously insists that Boeing is not a contractor, but rather an agent for the Government in performing the necessary services in the construction or alteration of the Michoud facility. The contract itself, however, discloses that the obligation for modification or renovation of the Michoud facility is imposed upon Boeing. The relevant portions thereof are contained in Article XX, entitled, “GOVERNMENT FURNISHED PROPERTY AND SERVICES”, which reads:
“C. The parties to this Contract recognize the need for modification of the Marshall Space Flight Center, Mi-choud Facility working area allocated to the Contractor. It is recognized that part of the Plant Modification work has been accomplished under Contract NAS8-2577 with the balance to be performed under this contract. This includes modifications to the facility, including certain types of work required to install machinery and equipment, which fall within the definition of ‘Construction Work’, e. g., construction, alterations, repairs (Including painting and decorating) of any public building and public works.
“D. It is recognized that the construction work to be performed under this Contract shall be subcontracted by the Contractor.” (Emphasis added.)
The above provisions emphatically establish as a fact that NASA looked to Boeing for the performance of any construction, modification, renovation, or installation work in the Michoud plant. Of course, it is true that it was known and understood by NASA that Boeing would subcontract this type of work to others; however, this does not militate against the fact that it was the exclusive obligation of Boeing as contractor to consummate the required work.
In such a delicate, intricate and scientific operation as the creation of a Saturn booster, it is obviously necessary that the plant be altered, modified, renovated or equipped in a manner suitable to the nature of the work contemplated by Boeing’s experts in order to permit Boeing to proceed with its major objective without the necessity of enduring tedious and costly delays and innumerable other impediments that could be caused by endeavoring to conduct this space age operation in a horse and buggy environment. Obviously, it was to the economic as well as the scientific advantage of Boeing to operate in a plant that would facilitate rather than hinder its principal effort, which is, in our opinion, sufficient reason to relinquish or fore-go any profit for this type of self-serving work.
Consequently, we are compelled to reach the inevitable conclusion that under the terms of the Boeing-NASA Contract, Boeing “had contracted to perform” the renovation and construction work on the Michoud Facility.
Incidentally, the foregoing conclusion is in conformity with the general rationale emanating from the case of Sanderson v. Binnings Construction Company[1] wherein this court judicially recognized that Boeing occupied the status of a principal contractor vis-a-vis the National Aeronautics and Space Administration under the Saturn Booster Contract. Of course, we are cognizant of the fact that the principal contention made herein was not asserted therein, probably because the contractual *377 status of Boeing with respect to NASA was entirely too obvious to that litigant. In any event, the plaintiff’s only action against the defendant emanates from the Louisiana Workmen’s Compensation Act; he possesses no action ex delicto against Boeing.
For the foregoing reasons, the judgment of the lower court is affirmed. The costs of this appeal are to be paid by the plaintiff. All other costs incurred herein are to await the final determination hereof.
Affirmed.

. 172 So.2d 721 (1965).