Clifford J. GEORGE, Plaintiff-Appellant,

v.

HOME INDEMNITY COMPANY and National Tank Company, Defendants-Appellees.

No. 27655.

United States Court of Appeals
Fifth Circuit.

Dec. 10, 1969.

Charles J. Hanemann, Jr., of O'Neal, Waitz & Henderson, Houma, La., for appellant.

Philip J. McMahon, Borowski & McMahon, Houma, La., for appellees.

Before GOLDBERG, DYER and CARSWELL, Circuit Judges.

CARSWELL, Circuit Judge:

In this diversity action, plaintiff-appellant sought to recover an award of damages for injuries received in the course of his employment. Appellant brought this action in tort, alleging that his injury was the result of the negligence of National Tank Company in the manufacture and distribution of its product. The District Court, holding that appellant's exclusive remedy lay under the provisions of the Louisiana Workmen's Compensation Act, granted appellee's Motion for Summary Judgment pursuant to Rule 56, F.R.Civ.P. We affirm.

Appellee, National Tank Company, is a Nevada corporation licensed to do business in Louisiana with its principal place of business in Tulsa, Oklahoma. National Tank entered into a written agreement with Gulf Oil Corporation to furnish Gulf a "gas producing facility" for use off-shore in waters adjacent to the State of Louisiana. National Tank, as contractor, agreed

"* * * to furnish all engineering, drafting, superintendence, labor, equipment, tools, machinery, transportation, supplies, materials and all other items necessary to engineer and construct producing equipment *completely assembled* ready for lifting to off shore platforms in accordance with Gulf's Plans and Specifications as per Bid Proposal WDP–9–65." (Emphasis added.)

The equipment was manufactured by National Tank at its Tulsa plant and shipped unassembled to Louisiana. In furtherance of its contract with Gulf, National Tank entered into an oral agreement with Berry Brothers General Contractors, Inc., of Berwick, Louisiana, under which Berry Brothers agreed to assemble the production unit at the McDermott yard in Bayou Beouf, Louisiana.

Appellant was employed by Berry Brothers as a general roustabout on a crew which was assembling the unit. During the assembly part of the boiler stack came loose and fell on the appellant which, according to the complaint, inflicted severe injuries on the appellant resulting in permanent-partial disability.

As in its contract with Gulf, ninety percent of National Tank's sales agreements are for assembled units. Because of the obvious difficulties in shipping preassembled large units such as the one in the present case, National Tank customarily subcontracts the assembly at or near the ultimate point of delivery. All small units are assembled by National Tank at its Tulsa plant prior to shipment.

Under its contract with National Tank, Berry Brothers supplied all labor and materials necessary for the job with the exception of a crane, crane operator and swamper. Berry Brothers billed National Tank on a per hour basis for the work performed.

The basic issue in this case is whether National Tank is to be considered the Statutory Employer of the appellant under the Louisiana Workmen's Compensation Act, La.R.S. § 23:1021–1182, particularly § 23:1061:

"*Where any person* (in this section referred to as principal) *undertakes to execute any work*, which is part of his trade, business or occupation *or which he has contracted to perform, and contracts with any person* (in this section referred to as contractor) *for the execution by or under the contractor of the whole or any part of the work undertaken by the principal*, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immedi-

ately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately·employed.

"Where the principal is liable to pay compensation under this Section, he shall be entitled to indemnity from any person who independently of this Section would have been liable to pay compensation to the employee or his dependent, and shall have a cause of action therefor." (Emphasis added).

Louisiana R.S. § 23:1032 provides:

"The rights and remedies herein granted to an employee or his dependent on account of a personal injury for which he is entitled to compensation under this Chapter shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents or relations."

Appellant contends that in any contracting arrangement under § 23:1061, it is necessary that the employee perform services in the course of his employer's (principal's) trade, business or occupation, and that the work appellant was engaged in was not of that character.

Appellant argues that since § 23:1061 only imposes liability on a principal for " * * * compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him * * *," it does not grant or deny compensation as such, but is effective only when read *in pari*

*materia* with the other provisions of the Act and in particular § 23:1035 which governs direct employees and provides:

"The provisions of this Chapter shall also apply to every person performing services arising out of and incidental to his employment in the course of his employer's trade, business, or occupation in the following hazardous trades, businesses and occupations: * * *."

Appellant would apply the same "tests" for determining the trade, business or occupation of a principal that are applied in cases involving a direct employer-employee relationship.

Appellee, on the other hand, contends that the Louisiana Legislature intended that when an employer undertakes work on a contract basis, such work should be considered, *a priori*, a part of his trade, business or occupation, and it should not matter that he is not regularly engaged in that particular work. Thus the basis of National Tank's argument is that § 23:1061 should be construed to govern two mutually exclusive contracting situations: (1) direct contracts and (2) subcontracts. It would therefore extend liability to a principal who contracts out work which is EITHER (1) part of the management or operation of his normal, day to day trade, business or occupation OR (2) work which he has contracted to perform.

There is no authority from the Supreme Court of Louisiana squarely in point on this problem. Cases from the lower appellate courts of Louisiana which have considered the problem, either directly or in passing, appear to be scarce and equally divided.[1]

The construction offered by the appellee would appear to be in accordance with the liberal construction the Act demands. Spanja v. Thibodaux Boiler

---

1. Appellant's position can be supported under an early Louisiana decision, Williams v. O.K. Construction Co., 151 So. 784 (2nd Cir.Ct.App.La.1934). A recent decision of the Fourth Circuit Court of Appeals of Louisiana, Palmer v. Willemet-Stouse Electric Co., 183 So.2d 373 (1966), and a United States District Court Decision, Daigle v. American Insurance Company, 234 F.Supp. 43 (E.D.La.1964), support the appellee. For a recent and able discussion of the problems inherent in a federal forum's interpretation of state decisions, see Judge Dyer's opinion in Breeland v. Security Insurance Co., 421 F.2d 918 (November 10, 1969).

Works, 2 So.2d 668 (Ct.App.Orl.1941); Thibodaux v. Sun Oil Co., 40 So.2d 761 (1st Cir.Ct.App.La.1949); Isthmian S. S. Co., v. Olivieri, 202 F.2d 492 (5th Cir. 1953). Provisions governing contractors and subcontractors are well known in workmen's compensation acts. Their purpose is to prevent an employer from avoiding his compensation responsibility by interposing an independent and often impecunious contractor or subcontractor between himself and his "employees." Shird v. Maricle, 156 So.2d 476 (3rd Cir.Ct.App.La.1963).

■ The construction advanced by the appellee would further the purpose of the Act by imposing limited but certain liability upon employers the nature of whose work is subject to change with each new contract.[2] In regard to such employments, a determination of the extent of the employer's "trade, business, or occupation" would be difficult if not impossible in many cases. Nor is it illogical to say that the nature of one's business is that which he voluntarily contracts to perform. Under appellant's proffered construction, such employers could receive the benefits of their "employees'" labor while, through technical arguments that the work is "special or separate," [3] escape most if not all danger of liability for accidents incidental to such work. Such a result would also appear to be at variance with the legal, social and economic compromise underlying the compensation principle.[4] The "either-or" construction eliminates these problems without saddling an employer, whose "trade, business or occupation" is "static" and therefore more easily discernible, with unnecessary liability.[5]

Under the general provisions of the Act as well as the direct contracting provisions of § 23:1061, the Louisiana Legislature has enacted no test for the determination of what constitutes the "trade, business, or occupation" of an employer or principal, but left this to judicial development. However, in regard to subcontracts under § 23:1061, and apparently for reasons already mentioned, the Louisiana Legislature has enacted a standard test to be applied in all cases. Under this test the court need only look at the principal's contracts and determine whether he has contracted out work which he himself has contracted to perform. Contrary to appellant's assertion this test does not appear to eliminate the requirements that the action arise out of an "accident" which occurred "in the course of his [injured employee's] employment," La.R.S. § 23:1031, and while engaged in a "hazardous" endeavor. La.R.S. § 23:1035, supra. Nor would § 23:1061, on its face, appear to alter the dictate of § 23:1035, supra, that the employee's services need only be "incidental to" his employment. But see Horrell v. Gulf & Valley Cotton Oil Co., Inc., supra.

■■ While National Tank, by virtue of contracting a portion of its Gulf contract to Berry Brothers, became the appellant's statutory employer under §

2. In any contracting out situation an employer is not to be suspected of attempting to contract away liability unless he contracts away a portion of his normal "trade, business, or occupation," or work so closely related as to be considered a part thereof. See Thibodaux v. Sun Oil Co., supra; Malone, Principal's Liability for Workmen's Compensation to Employees of Contractor, 10 La.L.Rev. 25 (1949). Thus an employer is free to contract for services of a specialized nature not readily attributable to the operation or management of his business. Situations of this type, under § 23:1061, can be found in the following cases: Adams v. Hicks Co., Ltd., 149 So. 242 (2d Cir.Ct.App.La.1933); Horrell v. Gulf & Valley Cotton Oil Co., Inc., 15 La.App. 603, 131 So. 709 (1930); White v. Equitable Real Estate Co., 18 La.App. 714, 139 So. 45 (1932).

3. See Isthmian S.S. Co. v. Olivieri, supra, at 494.

4. For a general discussion of this compromise see New York Central Railroad Company v. White, 243 U.S. 188, 37 S.Ct. 247, 61 L.Ed. 667 (1917).

5. See note 2, supra.

23:1061, it is clear that even were we to apply appellant's proposed construction, National Tank would still meet the requirements of § 23:1061.

Applying appellant's construction of § 23:1061 to the facts of this case, it cannot be gainsaid that appellant was not working on a "part of the work undertaken by the principal [National Tank]" or work which National Tank "has contracted to perform." See Palmer v. Willemet-Stouse Elec. Co., supra. It is difficult to imagine a more clear cut instance of a principal contracting out a part of his "trade, business or occupation" than is presented under the facts of this case. Judge Wisdom, in a recent opinion of this Court, Arnold v. Shell Oil Co., 419 F.2d 43 [November 12, 1969], has made a thorough review of Louisiana cases construing the direct contracting provision of § 23:1061 and has presented persuasive authority that the test for determining the "trade, business or occupation" of the principal "is whether the particular activity is essential to the business of the principal." Assembly of the unit prior to delivery was specified in the contract between Gulf and National Tank. Ninety percent of National Tank's contracts call for assembly of its products prior to delivery. All small units are assembled at its Tulsa plant by direct employees of National Tank. The only reason that large units' are not shipped pre-assembled is because of the limitations of conventional modes of transportation. It cannot be denied that National Tank's own regular employees had the expertise to assemble the unit and that this was not work of a specialized nature. See Goodwin v. United States Rubber Co., 186 So.2d 356, 358 (1st Cir.Ct.App.La.1966). It is

clear, however, that the method used by the principal to perform the work is not determinative of the issue. The fact that National Tank engaged the services of Berry Brothers cannot alter its status as a statutory employer under § 23:1061. Turner v. Oliphant Oil Corp., 200 So. 513 (2d Cir.Ct.App.La.1941); Arnold v. Shell Oil Co., supra.

■ Appellant urges that after shipment to Louisiana, National Tank ceased to have any interest in the unit and performed no services in Louisiana which would bring it under Louisiana Workmen's Compensation Act. These contentions are without merit. The contract between National Tank and Berry Brothers contemplated performance in Louisiana and the injury occurred in Louisiana. These factors alone give the State of Louisiana a significant interest in the matter and support the application of the Louisiana Workmen's Compensation Act. McKane v. New Amsterdam Casualty Co., 199 So. 175 (Ct.App. Orl.1940). Furthermore, National Tank supplied part of the labor, equipment and a supervisor. Under its contract with Gulf, National Tank was required to deliver an assembled unit, ready for installation and use. If this unit proved defective, because of assembly, Gulf would assert its contract rights against National Tank and not against Berry Brothers. Thus National Tank had an extensive interest in Berry Brothers' performance of their agreement. See Palmer v. Willemet-Stouse Electric Co., supra n. 1, 183 So.2d at 376.

The order of the district court granting Summary Judgment is without error and is

Affirmed.