258 So.2d 153 (1972)
Albert FOSTER et ux., Plaintiffs-Appellants,
v.
WESTERN ELECTRIC COMPANY, Inc., Defendant-Appellee.
No. 11754.
Court of Appeal of Louisiana, Second Circuit.
February 1, 1972.
Lewis Weinstein, Shreveport, for plaintiffs-appellants.
Cook, Clark, Egan, Yancey & King by Gordon E. Rountree, Shreveport, for defendant-appellee.
*154 Before BOLIN, PRICE and HEARD, JJ.
BOLIN, Judge.
Clara Foster and her husband, Albert Foster, brought this tort action against Western Electric Company, Inc., seeking damages for injuries, loss of wages and related medical expenses occasioned when Mrs. Foster slipped and fell in the cafeteria of defendant company where she was employed by Pickett Food Service which operated the cafeteria. Defendant filed a general denial and answer in which it alleged Mrs. Foster, who had received a workmen's compensation settlement from Pickett's insurer for the aforesaid injuries, has no remedy in tort against Western Electric but is relegated to her recovery under the Workmen's Compensation Act. From judgment rejecting plaintiffs' demands they appeal. The judgment is affirmed.
In addition to the defense outlined above, defendant alternatively alleged there was no negligence on the part of defendant or any of its employees or agents which was the proximate cause of Mrs. Foster's injury; further, in the alternative, it pleads plaintiff was contributorily negligent.
There is little dispute as to the facts. On November 1, 1968, Clara Foster was an employee of Pickett Food Service which was under contract with Western Electric to supply food services at the Western Electric plant in Shreveport, Louisiana. The facilities were apparently built and maintained by Western Electric, which employed some 3400 persons in its local plant. These employees worked in shifts and many of them ate one or two meals a day at the cafeteria at various times. Pickett purchased and brought in the food which was prepared in Western Electric's kitchen. All personnel connected with operation of the cafeteria were employees of Pickett.
On the day of the accident Mrs. Foster walked into the kitchen area after her lunch break and as she passed near a sink she slipped and fell, causing the injuries of which she complained. It was determined the fall was caused from water on the concrete floor which she had failed to observe.
Mrs. Foster made a workmen's compensation claim against Pickett and its compensation insurer, Maryland Casualty Company, and was paid benefits by Pickett and Maryland in the total amount of $2865, together with medical expenses in the amount of $1147.91. On June 16, 1969, Mrs. Foster, represented by an attorney, entered into a workmen's compensation settlement with Pickett and Maryland which settlement was approved by the Caddo Parish District Court. Subsequent to the settlement Mrs. Foster instituted this action against Western Electric.
The issues confronting this court are: does Mrs. Foster, having received workmen's compensation from her immediate employer, have a right in tort against Western Electric; if this question is answered affirmatively, have plaintiffs proved the fall was caused by defendant's fault?
We shall direct our attention first to the question of whether Mrs. Foster's exclusive remedy is her right to recover workmen's compensation benefits.
The statutory basis of Western Electric's defense is Louisiana R.S. 23:1032, 1061. Louisiana R.S. 23:1061 provides:
"Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed *155 in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him...."
Louisiana R.S. 23:1032 provides,
"The rights and remedies herein granted to an employee or his dependent on account of a personal injury for which he is entitled to compensation under this Chapter shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations...."
The law is clear that when an employee of an independent contractor is injured by the negligence of the principal for whom the independent contractor is performing the service, the employee has no right to recover in tort from the principal if the work being performed was a part of the usual trade, business, or occupation of the principal (necessary, essential, and integral part of the principal's business), and the employee's exclusive remedy, against either his own employer or the principal, is in workmen's compensation.
Western Electric contends the food service provided by its contractor is a part of its trade, business, or occupation, and the Fosters' exclusive remedy against Western Electric is workmen's compensation benefits.
To support this contention defendant called two witnesses. Mr. Jim Bolch and Mr. O. J. Belin. Bolch, department chief from Western Electric in charge of public and community relations, training, security, and restaurant operations testified he had no knowledge of the accident itself, but was called for the purpose of describing the relationship between Western Electric and Pickett Food Service, the delineation of responsibility in the maintenance area between Pickett and Western Electric, and for the purpose of testifying on the issue of whether or not the food service which Western Electric provided through Pickett was a necessary and integral part of the business of Western Electric. Bolch identified the contract for supplying of the food service between Pickett and Western Electric and testified Pickett was responsible for all of the food service and for the management and operation of the cafeteria areas and kitchen area. No Western Electric employees worked in connection with the cafeterias or the kitchen. Respecting the arrangement as to repair, maintenance and cleaning operations, Bolch testified Pickett was responsible for all of the normal cleaning operations, which included cleaning and washing of the floors, tables, kitchen, cafeteria and other food preparation areas. On the other hand, Western Electric was responsible for the maintenance and repair of the equipment in the cafeteria and kitchen.
The plant had three shifts running 24 hours a day. The first shift was the largest and the employees came to work at 7:00 a. m. The second shift began at approximately 4:00 p. m. with quitting time being about 12:30 a. m. A small third shift worked from approximately 11:00 p. m. to 6:30 a. m. the next morning. The hourly employees had a 30-minute lunch break with the salaried employees having 45 minutes. Western Electric found that one cafeteria was not sufficient and installed and constructed two cafeterias, one at the south end of the plant and one at the north end of the plant. It takes approximately ten minutes to walk from the north end to the south end or vice versa. The stated reason for Western Electric providing food service facilities included the fact that good, hot and wholesome food is to the benefit of the employees, from a health as well as a morale standpoint. Further, it would be virtually impossible not to have food service facilities as there were not sufficient restaurants in close proximity to the Western Electric plant in Shreveport adequately to serve and feed the Western Electric employees. For example, *156 during the noon lunch shift 2400 people were fed.
O. J. Belin, resident manager for Pickett Food Service at the Western Electric plant, next testified. He confirmed Bolch's testimony regarding the responsibilities between Pickett and Western Electric for maintenance and normal cleaning operations.
Whether a contractor's activity is a part of his principal's trade, business, or occupation is primarily a question of fact. The jurisprudence has enunciated some interpretations of Louisiana R.S. 23:1061 which are helpful in deciding this issue.
A contractor's activity has been held to be part of the principal's trade, business, or occupation where the activity is a "normal and integral" part of the principal's business. Vizena v. Travelers Insurance Company (La.App.3d Cir.1970), 238 So.2d 238; Meche v. Farmers Drier & Storage Company (La.App.3d Cir.1967), 193 So.2d 807; Mau v. Industrial Steel Products Company, Inc., (La.App.2d Cir. 1960), 119 So.2d 654; Stansbury v. Magnolia Petroleum Company (La.App. 1st. Cir.1957), 91 So.2d 917.
In Arnold v. Shell Oil Company (5th Cir.1969), 419 F.2d 43, 50, the court, after a detailed discussion of the Louisiana cases, stated, "the test seems ... [to be] whether the employer would have to hire some workers of its own to perform the activity if it were not performed by the independent contractor; in other words, whether the activity was essential to the employer's business." The term "essential" was also mentioned in Stansbury and Meche, supra.
Courts have found that "a pertinent factor... is whether the work performed is usually or customarily performed by those engaged in similar businesses as the principal." Frey v. Brown (La.App.3d Cir.1971), 254 So.2d 491; Goodwin v. U. S. Rubber Company (La.App.1st Cir. 1966), 186 So.2d 356; Shird v. Maricle (La.App.3d Cir.1963), 156 So.2d 476. [On this point defendant's witnesses testified Pickett serviced numerous other large industrial plants in the Shreveport area.]
Regardless of the phraseology used by the courts, there are few activities of contractors which have been held to be not a part of the principal's business. One of the activities consistently held not to be a part of the principal's business is that of erecting or reconstructing the principal's buildings. Doss v. American Ventures, Inc. (La.App.4th Cir.1971), 248 So.2d 358.
Research discloses no case involving a food service contractor's employee. However, the case of Gant v. Jackson Brewing Company (La.App.Orl.1959), 112 So.2d 767, is somewhat analogous to the one at hand. In Gant the plaintiff was a guard for the Pinkerton Detective Agency, which had been hired by defendant to guard its brewery. The guard was injured and brought suit against the brewing company under R.S. 23:1061 for workmen's compensation benefits. Recovery was allowed, the court stating, "We do not think that it could be logically or successfully argued that the defendant in connection [with its business or trade] would not require the services of employees to police its plant by watching and guarding the safety and security thereof and protecting its operations, property and good will."
We find the food service is an essential part of Western Electric's trade, business, or occupation, since without it there would be production, morale, and sanitation problems. Further, Western Electric would have to employ workers of its own to perform the food service activity if it were not performed by the contractor. This conclusion obviates the necessity for passing on the issue of fault.
The judgment of the district court is affirmed at plaintiffs' cost.