Thomas C. LILES

v.

**RIBLET PRODUCTS OF LOUISIANA, INC., and American Employers Insurance Company.**

Civ. A. No. 17943.

United States District Court, W. D. Louisiana, Shreveport Division.

Aug. 30, 1973.

Addendum Sept. 7, 1973.

Jackson B. Davis, Troy E. Bain, Booth, Lockard, Jack, Pleasant & Le Sage, Shreveport, La., for plaintiff.

Benjamin C. King, Cook, Clark, Egan, Yancey & King, Shreveport, La., for defendants.

## RULING ON PENDING MOTION FOR SUMMARY JUDGMENT

DAWKINS, Senior District Judge.

### THE ISSUES

This diversity tort action was commenced as the result of an alleged vehicular accident on U. S. Highway 71 near Alexandria, Louisiana, involving an employee of defendant, Riblet Products of Louisiana, Inc., and plaintiff, Thomas C. Liles, an employee of State Line Escort Service.

Defendants, Riblet and American Employers Insurance Company, its liability insurer, filed a motion for summary judgment on the ground that Riblet is the "statutory employer" of plaintiff under the Louisiana Workmen's Compensation Statute, La.R.S. 23:1061; hence, that plaintiff's exclusive remedy is for workmen's compensation and he may not bring a tort action against them.

Riblet is a corporation organized under the laws of Indiana, authorized to do and doing business in Louisiana, and is engaged in the manufacture, sale, and delivery of mobile home frames in Louisiana, Arkansas and Texas. In connection with its business, Riblet has a plant on Shed Road in Bossier City, Louisiana, where it maintains a fleet of trucks and equipment for delivering frames to purchasers. Its employees are engaged in the manufacture and sale of mobile home frames, and it also employs staff truck drivers and other employees whose duties include despatching, operation, and maintenance of these trucks.

The mobile home frames manufactured and delivered by Riblet all are either twelve or fourteen feet in width. La.R.S. 32:388 authorized the Director of Highways of Louisiana to issue special permits for operation of vehicles carrying oversize loads on the State's highways. In issuing these permits, the Director is authorized to impose certain conditions, one of which is the requirement for a proper escort, State Police or otherwise. Pursuant to this, Director's Policy and Procedure Memoranda No. 71, dated January 12, 1970, required that all loads exceeding twelve feet in width be accompanied by a properly equipped escort vehicle. Hence, Riblet on various occasions has engaged the services of several escort companies to provide this service for its vehicles when delivering frames exceeding twelve feet in width, since it does not maintain equipment or drivers of its own to do this.

When the accident here being litigated occurred, Riblet was delivering mobile home frames which were fourteen feet wide. It had entered into a verbal agreement with State Line to provide the required escort. Plaintiff, an employee of State Line, was driving the escort vehicle. He claims that the driver of defendant's truck ran into the rear of the escort vehicle during the course of delivery of a frame, causing injuries to him.

Pursuant to F.R.Civ.Proc. 56, defendants seek summary judgment, contending that no genuine issue as to any material fact is present and that they are entitled to a judgment of dismissal as a matter of law. Their basic argument is that, since La.R.S. 23:1061 [1] provides

---

1. "Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of

the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceed-

liability for workmen's compensation only for any injury plaintiff may have sustained in the accident that relief is plaintiff's exclusive remedy.[2] The validity of this assertion hinges solely upon determining whether providing an escort vehicle to facilitate delivery of mobile home frames is a regular, usual, ordinary and integral part of Riblet's business within the meaning of the statute.

In opposing defendants' motion, plaintiff first argues that there indeed is a genuine issue as to material fact, based upon an apparent discrepancy between an affidavit signed by Frank E. Deen, Plant Manager of Riblet, and a deposition which he gave subsequently wherein he thoroughly was cross-examined by plaintiff's counsel. Plaintiff contends that the services provided by State Line were not a part of the "trade, business, or occupation" of Riblet as interpreted by Louisiana jurisprudence.

## CONCLUSIONS

Based upon the record presented here, we find there are no such genuine issues of material fact to preclude our granting the motion for summary judgment. Plaintiff's contention that there is such a genuine issue lies in a purported discrepancy between an affidavit and deposition of Deen.[3] First, plaintiff claims Deen's affidavit clearly repudiates his statement that Riblet employs such escort personnel, including the driver of

ings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed.

"Where the principal is liable to pay compensation under this section, he shall be entitled to indemnity from any person who independently of this Section would have been liable to pay compensation to the employee or his dependent, and shall have a cause of action therefor."

2. La.R.S. 23:1032:
"The rights and remedies herein granted to an employee or his dependent on account of a personal injury for which he is entitled to compensation under this Chapter shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations."

3. Deen executed an affidavit July 3, 1972, wherein he stated:
"That Riblet Products of Louisiana, Inc. maintains on its employment staff truck drivers and other employees whose duties include the operation of heavy duty trucks for the transportation and delivery of mobile homes and frames, *the escort thereof*, maintenance and all other work necessary or related to the business of Riblet Products of Louisiana, Inc. in its manufacture, sale and delivery of mobile homes and frames within the area served by this company." (Emphasis ours.)
But, in a deposition given August 13, 1972, he testified that Riblet did not have drivers

or equipment which were used to escort its trucks. Pertinent excerpts from his deposition follow:
"Q Do you own any escort vehicles?
A No
Q Have you ever owned any escort vehicles?
A No.
         *    *    *    *    *
Q I guess if you don't have any escort vehicles then you don't have any people who are escort drivers?
A No.
Q You have none?
A No.
         *    *    *    *    *
Q Have you ever had any escort vehicles?
A No. I have got one truck that could be utilized as an escort vehicle under the right inspection.
Q Has it ever been used?
A No.
Q It has never been used as an escort vehicle?
A No.
Q Did you recently give an affidavit to Mr. Benjamin King?
A Right.
Q You are the same Frank E. Deen that signed this affidavit?
A Right.
Q Let me show you a copy of it and ask you to look at it. You are the same Frank E. Deen that signed this affidavit?
A Right.
Q Which is a three-page affidavit, and it is signed July 3, 1972, is that right?
A I believe it was."

the truck involved, and, second, this consequently creates an issue which has not been resolved.[4]

It is clear that Riblet neither has the equipment nor the employees necessary to escort delivery of over-size loads.

Third, even if a discrepancy between the affidavit and deposition given by Deen is considered as creating an issue of fact, it still does not create an issue of material fact,[5] since its resolution one way or the other would not affect the result.

As stated, defendants are entitled to judgment in their favor as a matter of law. La.R.S. 23:1061 provides that any person who "contracts out" work which is part of his trade, business, or occupation is liable to any employee of a contractor engaged in such an enterprise for workmen's compensation to the same extent as if the contractor's employee were one of his own employees.

■ The purpose of this provision in the Compensation Act is to prevent an employer from avoiding his compensation responsibility by interposing independent contractors or subcontractors between himself and his employees. Malone, "Principal's Liability for Workmen's Compensation to Employees of Contractor," 10 La.Law Rev. 25 (1949).

As the *quid pro quo* for subjecting the principal to liability for workmen's compensation to his subcontractor's employees, § 1032 of the Act grants the employer immunity from tort liability. Consequently, the crucial issue we must determine is whether the escort service provided here was a part of Riblet's business within the meaning of the statute, so as to establish workmen's compensation benefits as the exclusive remedy available to plaintiff against defendants.

■ We hold that under Louisiana jurisprudence these escort services are an integral, usual, and necessary part of Riblet's business; hence, that plaintiff's tort action is proscribed by § 1032.

■ Since determination *vel non* indeed depends upon whether a contractor's particular activity is a part of his trade, business, or occupation turns primarily on the facts of each individual case, Foster v. Western Electric Co., 258 So.2d 153, 156 (2nd Cir. La.App.1972), we are not compelled to examine or particularize the varying factual situations presented in the cases cited in plaintiff's brief. It is sufficient that the test is whether an activity actually is a part of the business of a principal as enunciated by the Fifth Circuit in Arnold v. Shell Oil Co., 419 F.2d 43 (5th Cir., 1969) after thorough examination of the Louisi-

---

4. F.R.Civ.P. Rule 56(c), 28 U.S.C.:

"The [summary] judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Unlike a situation where the deposition of one person conflicts with the affidavit of another, we here are not faced with resolving an issue of fact; rather, we merely are faced with the necessity of recognizing correction of an error made by one of the employees of Riblet.

5. *See* Arnold v. Shell Oil Co., 419 F.2d 43 (5th Cir., 1969) where the Fifth Circuit thoroughly examined Louisiana's jurisprudence and came to the conclusion that:

"The fact that the employer or the industry as a whole always contracts out the

activity is not controlling. . . . If the test under this statute [La.R.S. 23:1061] were whether the employer had any employees engaged in similar functions, the employer could easily subvert the statute by contracting out all of the various parts of his business." *Id.*, at page 50.

Consequently, the Court held that the District Court erred in refusing to grant Shell's motion for judgment n. o. v. because, as a matter of law, the subcontractor's maintenance and repair was a part of Shell's "trade, business, or occupation" so that the plaintiff's sole remedy was under the Louisiana Workmen's Compensation law. Massey v. Rowan Drilling Co., 368 F.2d 92 (5 Cir. 1966); Turner v. Oliphant Oil Corporation, 200 So. 513 (2d Cir., La.App., 1940).

ana jurisprudence. The Court there stated:

> "We regard *Massey* [Massey v. Rowan Drilling Co., 368 F.2d 92 (5th Cir. 1966)] as correctly stating the Louisiana law, in light of *Thibodaux* [Thibodaux v. Sun Oil Co., 218 La. 453, 49 So.2d 852 (1950)] and *Turner* [Turner v. Oliphant Oil Corp., 200 So. 513, (2d Cir. La.App.1940)], that the test for determining whether an activity is part of an employer's trade or business for purposes of the Louisiana Workmen's Compensation Statute is whether the particular activity is essential to the business. The fact that the employer or industry as a whole always contracts out the activity is not controlling." *Id.* 419 F.2d at page 50.

Applying the "essential-to-the-business" test,[6] it is obvious that the unvarying practice of escorting over-size loads was a part of Riblet's business since it was engaged, not only in manufacturing and selling these frames, but also in delivering them. Therefore, the law of Louisiana, and regulations thereunder require that transportation of frames exceeding 12 feet in width be accompanied by an escort vehicle. As put another way in *Arnold*, 419 F.2d at 50, ". . . [t]he test seems rather whether the employer would have to hire some workers of its own to perform the activity if it were not performed by the independent contractor. . . ."

This precisely was the situation faced by Riblet here. Although Riblet must have obtained a special permit, its invariable practice of employing independent contractors for escort services for its trucks was not work ". . . of such a special or separate character as would not ordinarily or appropriately be performed by the principal employer's own employees in the prosecution of its business. . . ." Isthmian S. S. Co. v. Olivieri, 202 F.2d 492, 494 (5th Cir. 1953).[7]

■■ Plaintiff argues that there is a dual-pronged test which must be applied in ascertaining which activity is part of the principal's business: 1) it must be part of the principal's *regular* or *usual* business and, 2) *essential* to its business. In a sense this assertion is correct ". . . [s]ince even direct employees must be engaged in work which is a part of the *regular* business of the employer . . ." before liability can attach under the Workmen's Compensation Act. Malone, "Louisiana Workmen's Compensation Law and Practice," § 125, at page 152 (1951). (Emphasis added.) Nevertheless, this does not conflict with the "essential-to-the-business" test of *Arnold* which concerns itself with the *"part-of the principal's business"* inquiry, and apparently assumes the business to be that usual to the principal.

Moreover, plaintiff's proposition presents no problem here since there absolutely is no doubt that the business of manufacturing, selling and delivering mobile home frames, for which escort services are an essential and integral part, is Riblet's usual and regular business.

■ Plaintiff also attempts to distinguish *Arnold*, and the Louisiana cases upon which it relies, in limiting the "essential-to-the-business" test as dealing only with employers engaged in oil and gas production. His argument is that

---

6. This test articulated in *Arnold* repeatedly has been approved.
   George v. Home Indemnity Co., 420 F.2d 782 (5th Cir. 1969); Cole v. Chevron Chemical Company, 427 F.2d 390 (5th Cir. 1970); Whittington v. Gulf Oil Corp., 337 F.Supp. 952 (W.D.La., 1971); Roelofs v. Lewals, Inc., 344 F.Supp. 1003 (W.D.La., 1972); Foster v. Western Electric Co., 258 So.2d 153 (2nd Cir. La.App.1972).

7. Plaintiff contends that escort service is a specialized business which is not part of defendant's regular business since an escort vehicle must be specially equipped and a special permit obtained for operation of each such vehicle. But this does not exclude escort service from the perimeter of Riblet's business any more than the requirement of a special driver's permit for operating its large trucks excludes that activity.

the Courts have placed these employers in a special class, and *Arnold* was meant to apply only to oil producers, not to be applied here. We reject this contention as devoid of any merit. There is no indication in the Louisiana Act that it is intended to apply more or less stringently to producers of oil and gas. Further, there is no inkling in *Arnold* that the test there articulated was to be limited to the oil and gas industry. In fact, in formulating the test, the Court relied heavily on its prior decision in Isthmian S. S. Co. v. Olivieri, *supra,* which held that work performed by a watchman under contract with a steamship company was part of that defendant's shipping business. *See Arnold, supra,* 419 F.2d at page 50.

Foster v. Western Electric Co., 258 So.2d 153 (2nd Cir. La.App.1972), illustrates approval not only of *Arnold* by the State Courts but that its rule has not been limited to cases involving oil and gas activities. Relying on Arnold, the Court in *Foster* held that food service to Western Electric's Shreveport plant was ". . . an essential part of Western Electric's trade, business or occupation, since without it there would be production, morale and sanitation problems. Further, Western Electric would have to employ workers of its own to perform food service activity if it were not performed by the contractor." *Id.,* at page 156. It naturally followed there

that Foster's tort action was precluded by § 1032.

The only authority plaintiff cites in support of his position postulates that State and Federal Courts often have found that large scale construction by oil industries of their own structures or equipment through contractors is a part of their business within the meaning of § 1061, even though, as a rule, such construction would not be considered part of the business of other industries.[8] Although it is obvious that more business activities have been considered part of the business of oil and gas drilling operations, this clearly does not require application of a special test in these situations alone. Rather, it is the result of the extensive scope of such operations with the consequence that application of the "essential-to-the-business" test has resulted in inclusion of a greater variety of these activities in Louisiana within coverage of the Compensation Act.

Plaintiff further urges that the tort action immunity provision of the Compensation Act should not be applied to principals, such as defendant, who are deemed employers merely for purposes of insuring employees of subcontractors a solvent employer. The argument he advances that this was not the true legislative intent in enactment of La.R.S. 23:1061, to prevent injured employees of a contractor from recovering in tort against a negligent principal, is somewhat persuasive.[9] But this same propo-

---

8. *See* Malone, *supra,* § 125 at page 153:

"If the business is one whose operation normally includes a wide variety of work in the development or severance of natural resources, it cannot build or install its own structures or equipment through contractors and escape compensation liability, *since installations of this kind are usually done by the principal directly.* This is particularly true of oil producing enterprises. . . . In fact, the statement has been made that such an enterprise cannot avoid liability even by showing that work of this kind is customarily done through specialty contractors. This observation possibly was prompted by the spectre of attempted mass evasion of liability through the concerted use of contractors." (Emphasis ours.)

9. Justice Tate expressed this viewpoint in his concurring opinion in Broussard v. Heebe's Bakery, Inc., 263 La. 561, 268 So.2d 656, at page 661 (1972):

"I therefore do not find it appropriate to dispose of, as dicta, the alternative second contention that, in any event, La. R.S. 23:1061 was not intended to prevent injured employees of a contractor from recovering in tort against a negligent principal. The intent of this statutory provision was simply to afford an injured employee an alternative remedy in compensation against a principal, who is entitled to indemnification from the true employer of the injured workman. When in fact the true employer is responsible in compensation and is solvent and insured, then the principal has no compensation

sition directly was presented to the Louisiana Supreme Court in *Broussard*, where it was rejected by the Court.[10]

Although this determination was criticized by Justice Tate in his concurring opinion as being unnecessary *dicta* and in any event contrary to legislative intent, prompting the "statutory employer" provision of the Act, it is not for us, in a diversity case such as this, to make an independent interpretation of the statute contrary to strong evidence that Louisiana's Supreme Court would come to a different conclusion, which is to say we are *Erie*-bound.[11]

■ Louisiana's jurisprudence is settled that ". . . the compensation statute is to be liberally construed so as to include all services that can reasonably be said to be within the statute not only when the injured person seeks its protection but also when he attempts to have himself excluded from coverage of the Act." Isthmian S. S. Co. of Delaware v. Olivieri, 202 F.2d 492, at page 494 (5th Cir., 1953) ; Arnold v. Shell

Oil Co., 419 F.2d 43, 47 (5th Cir. 1969) ; Thibodaux v. Sun Oil Co., 40 So.2d 761, 766 (2d Cir., La.App., 1949), aff'd 218 La. 453, 49 So.2d 852 (4th Cir. La.App. 1971).

If plaintiff were seeking to hold defendants liable here for workmen's compensation under the provisions of § 1061, it is clear he would succeed, since without the escort service Riblet would be unable to carry on its business of delivering mobile home frames; and, absent subcontractors such as State Line, it would have to hire and train its own employees to provide this service. Under the jurisprudence of Louisiana, the mere fact that defendants are asserting this protection under its Compensation Act in order to obtain immunity from plaintiff's tort action cannot effect a different result here.

It, therefore, is ordered that the motion for summary judgment by defendants is hereby granted. Plaintiff's suit is dismissed.

---

liability and he is not entitled to rely upon the compensation act (designed to protect the employee, not a third person tort feasor) as exempting him from liability under the exclusive-remedy provision of the compensation act, La.R.S. 23 :1032. See the excellent concurring opinion of Judge Lemmon in Broussard v. Heebe's Bakery, Inc., 254 So.2d 284, at 288 (La. App.1971)."

10. Broussard v. Heebe's Bakery, Inc., 263 La. 561, 268 So.2d 656, 658 (1972) :
"In Benoit v. Hunt Tool Co. [219 La. 380, 53 So.2d 137 (1951)], the Court said :
'Under the Workmen's Compensation Act and the jurisprudence of this state, the exclusive remedy of the employees of the contractor against the principal, as these two terms are used in the act, is for workmen's compensation, and there is no remedy in tort against the principal, as the principal is not a third person under the provisions of Section 7 of the act. . . . The effect of Section 6 is that the principal shall be considered the employer of the employees of the contractor, in contemplation of the statute, so that such employees shall have the right to demand compensation from the principal, and this is their exclusive remedy,

and the principal cannot be held liable to the employees of the contractor in tort.'
"In view of our settled jurisprudence, the contention of plaintiff is one which addresses itself more properly to the legislature. That body has met time and time again and is presumed to be aware of our rulings. Yet it has not seen fit to amend the statute to conform to the views and contentions advanced by the plaintiff and amicus curiae."

11. Wright, Law of Federal Courts (1970) § 59 at page 239 :
"If there are no holdings from state courts, high or low, on the matter that the federal court is to decide, that court must look for other indications of the state law. Though there are various remarks from federal courts about the effect of state court dicta, such remarks should not be read out of context. Much depends upon the character of the dictum. Mere obiter may be entitled to little weight, while a carefully considered statement by the state court, though technically dictum, must carry great weight, and may even, in the absence of any conflicting indication of the law of the state, be regarded as conclusive." (Footnotes omitted.)

### ADDENDUM

Since our opinion herein was rendered on August 30, 1973, we have received a copy of the slip opinion rendered by the United States Court of Appeals for the Fifth Circuit in No. 73–1940, Summary Calendar, Robert Carroll, Plaintiff-Appellant, Security Insurance Company, Intervenor-Plaintiff-Appellant, v. John C. Kilroy and Exxon Corporation, Defendants-Appellees, 483 F.2d 977, dated August 31, 1973, wherein that Court affirmed the District Court's granting summary judgment in favor of Exxon Corporation.

In our judgment, that decision presents an even stronger reason, under the facts involved therein, for granting summary judgment here.